UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X Docket #: 99 Civ. 3785
KELLY HALLISSEY, et. al.,                Judge Duffy

                         Plaintiffs,

             -against-


AMERICA ONLINE, INC., et. al.,


                         Defendants.
---------------------------------------X
              ATTORNEY'S DECLARATION OF LEON GREENBERG

     Leon Greenberg, an attorney duly licensed to practice law in

the State of New York and a member of the Bar of this Court,

hereby affirms, under penalty of perjury, the following:

     1.  I am counsel for the plaintiffs in this matter and offer

this declaration in support of the plaintiffs' motion for leave

to serve and file a second amended complaint and dismiss two

resulting duplicative two related proceedings.

     2.  The memorandum of law filed with the Court in support of

the aforesaid motion references the following Exhibits A to G.

Those Exhibits are annexed hereto and I certify they are true and

accurate copies of original documents:

     Ex. "A" - Plaintiffs' Proposed Second Amended Complaint;

     Ex. "B" - Memorandum and Order of March 10, 2006;

     Ex. "C" - Joint Stipulation of March 30, 2000;

     Ex. "D" - Memorandum and Order of February 19, 2008;

     Ex. "E" - Complaint filed May 21, 1999;

Ex. "F" - Amended Complaint filed July 23, 1999;

Ex. "G" - Correspondence from defendants' counsel dated January 26, 2009.

3.  In support of the plaintiffs' motion declarations are provided from each of the plaintiffs who are seeking to make the additional State law claims in the proposed second amended complaint (Ex. "A").  Each of those declarations attest to the plaintiff's involvement with the defendants' "Community Leader" program; their performance of work for the defendants without receiving any wages whatsoever; their performance of such work within a particular specified time frame and while within the State under which laws they seek to make a claim; and their willingness to serve as a putative class representative on such proposed State law claims and their understanding of the duties of serving as such a class representative.  These plaintiff declarations, and the States to which they correspond, are annexed hereto and are identified in the following list:

Ex. "1" - California, declarations of Mare Stern, Arnold Tijerina and Cynthia L. Weis;

Ex. "2" - Colorado, declaration of Sherie D. Perez;

Ex. "3" - Connecticut, declaration of Lynn M. Bemont;

Ex. "4" - Delaware, declaration of Gregory Maccord;

Ex. "5" - Illinois, declarations of James R. Gordon, and Brian Meyers;

Ex. "6" - Iowa, declaration of Elizabeth Pogue;

Ex. "7" - Kentucky, declaration of Kelly Costin;

Ex. "8" - Maine, declaration of Heather Townsend;

Ex. "9" - Maryland, declaration of Karl E. Temple;

Ex. "10" - Massachusetts, declaration of Patricia A. Meigs;

Ex. "11" - Minnesota, declaration of Julie Daily;

Ex. "12" - Nebraska, declaration of Janet Hamlin;

Ex. "13" - Nevada, declaration of William Campbell;

Ex. "14" - New Hampshire, declaration of Carl K. Rich;

Ex. "15" - New Jersey, declarations of Christopher W. Houghton, Thomas Lorge and Pamela Spencer Johnson;

Ex. "16" - New Mexico, declaration of Georgia Weston;

Ex. "17" - Ohio, declarations of Donald Lowe and Tom Armbruster;

Ex. "18" - Oregon, declaration of Anita June Gray;

Ex. "19" - Pennsylvania, declaration of Rayanne M. Buchianico;

Ex. "20" - Rhode Island, declaration of Cynthia Aldrich;

Ex. "21" - Vermont, declaration of Bradley R. Talbot;

Ex. "22" - Washington, declarations of Jerry W. Osborne and Debbie Thune; and

Ex. "23" - Wisconsin, declaration of Thomas Brusky.

4.  In respect to the declarations detailed in paragraph 3 and attached there are certain other particulars that I summarize

for the Court's convenience.  Plaintiff Jerry W. Osborne (declaration at Ex. "22") was employed in both Washington State and Pennsylvania by defendants and seeks to make claims under the laws of both States.  Plaintiffs Christopher W. Houghton, Thomas Lorge, Pamela Spencer Johnson (declarations at Ex. "15") and Donald Lowe and Tom Armbruster (declarations at Ex. "17") are plaintiffs in separate actions against defendants that were removed to the United States District Court from the State Courts of New Jersey and Ohio and subsequently transferred to this Court by the Panel on Multi-District Litigation.  The declarations submitted by these five plaintiffs also attest to their support for the amendment of the complaint in this case to incorporate their New Jersey and Ohio State law claims and for the dismissal of their resulting duplicative separately filed litigations.

I have read the foregoing and affirm the same is true and correct.


Las Vegas, Nevada
Affirmed this 27th Day of February, 2009


_____
Leon Greenberg, Esq.


4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X Docket #: 99 Civ. 3785(KTD)

KELLY HALLISSEY, BRIAN A. WILLIAMS, JERRY
W. OSBORNE, ANTHONY E. McLAUGHLIN, THOMAS
S. BRUSKY, ARNOLD TIJERINA, JADE M.
BEETLE, CYNTHIA L. WEIS, MARE STERN,
SHERIE D. PEREZ, LYNN M. BEMONT, GREGORY
MACCORD, KELLY COSTIN, JAMES R. GORDON,
BRIAN D. MEYERS, ELIZABETH POGUE, HEATHER
TOWNSEND, KARL E. TEMPLE, PATRICIA A.
MEIGS, JULIE DAILY, WILLIAM CAMPBELL,
CARL K. RICH, GEORGIA WESTON, JANET
HAMLIN formerly known as JANET GREEN,
ANITA JUNE GRAY, RAYANNE M. BUCHIANICO        SECOND AMENDED
formerly known as RAYANNE M. BORAN,           COMPLAINT
CYNTHIA ALDRICH, DEBBIE THUNE, PAMELA
SPENCER JOHNSON, CHRISTOPHER W. HOUGHTON,
THOMAS LORGE, DONALD LOWE, TOM
ARMBRUSTER, and BRADLEY R. TALBOT,
Individually and on behalf of others
similarly situated,

                    Plaintiffs,

          -against-

AMERICA ONLINE, INC. and AMERICA
ONLINE COMMUNITIES, INC.

                    Defendants.

-----------------------------------X

        The Plaintiffs, by their attorneys, Leon Greenberg and

Michael Shen, as and for a Second Amended Complaint against the

defendants, state and allege, as follows:

            JURISDICTION, PARTIES AND PRELIMINARY STATEMENT

        1.      This Court has jurisdiction over the claims

presented on the First Claim for Relief herein pursuant to the

Act of June 25, 1938, ch 676, 52 Stat 1069, 29 USC Sections

201-219, known as the Fair Labor Standards Act ("the FLSA" or "the Act"), a law of the United States regulating interstate commerce, and specifically under the provisions of Section 16 of said act, as amended (29 U.S.C. § 216(b)).

2.   This Court has jurisdiction over the State Law claims presented in the Second and Third Claims for Relief pursuant to 28 U.S.C. § 1367(a).

3.   The defendants employed the plaintiffs Kelly Hallissey and Jade M. Beetle in the State of New York.

4.   The plaintiff Brian A. Williams was a resident of the State of Texas when this case was commenced.

5.   The defendants employed the plaintiff Thomas S. Brusky in the State of Wisconsin and he is a resident of that State.

6.   The plaintiff Anthony E. McLaughlin was a resident of the State of West Virginia when this case was commenced.

7.   The defendants employed the plaintiff Jerry W. Osborne in the States of Pennsylvania and Washington and he is a resident of the State of Washington.  The defendants employed the plaintiff Debbie Thune in the State of Washington and she is a resident of the State of Washington.

8.   The defendants employed the plaintiffs Arnold Tijerina, Mare Stern and Cynthia L. Weis in the State of California.

9. The defendants employed the plaintiff Sherrie D. Perez in the State of Colorado and she is a resident of the State of

Colorado.

    10. The defendants employed the plaintiff Lynn M. Bemont in the State of Connecticut and she is a resident of the State of Connecticut.

    11. The defendants employed the plaintiff Gregory Maccord in the State of Delaware and he is a resident of the State of Delaware.

    12. The defendants employed the plaintiff Kelly Costin in the State of Kentucky and he is a resident of the State of Kentucky.

    13. The defendants employed the plaintiffs James R. Gordon and Brian D. Meyers in the State of Illinois and they are residents of the State of Illinois.

    14. The defendants employed the plaintiff Elizabeth Pogue in the State of Iowa and she is a resident of the State of Iowa.

    15. The defendants employed the plaintiff Heather Townsend in the State of Maine and she is a resident of the State of Maine.

    16. The defendants employed the plaintiff Karl E. Temple in the State of Maryland and he is a resident of the State of Maryland.

    17. The defendants employed the plaintiff Patricia A. Meigs in the State of Massachusetts and she is a resident of the State of Massachusetts.

3

18.   The defendants employed the plaintiff Julie Daily in the State of Minnesota and she is a resident of the State of Minnesota.

19.    The defendants employed the plaintiff Janet Hamlin in the State of Nebraska and she is a resident of the State of Nebraska.

20.  The defendants employed the plaintiff William Campbell in the State of Nevada and he is a resident of the State of Nevada.

21.  The defendants employed the plaintiff Carl K. Rich in the State of New Hampshire and he is a resident of the State of New Hampshire.

22.   The defendants employed the plaintiffs Pamela Spencer Johnson, Christopher W. Houghton and Thomas Lorge in the State of New Jersey and they are residents of the State of New Jersey.

23.   The defendants employed the plaintiff Georgia Weston in the State of New Mexico and she is a resident of the State of New Mexico.

24.    The defendants employed the plaintiffs Donald Lowe and Tom Armbruster in the State of Ohio and they are residents of the State of Ohio.

25.    The defendants employed the plaintiff Anita June Gray in the State of Oregon and she is a resident of the State of Oregon.

4

26.    The defendants employed the plaintiff Rayanne M. Buchianico formerly known as Rayanne M. Boran in the State of Pennsylvania and she is a resident of the State of Pennsylvania.

27.    The defendants employed the plaintiff Cynthia Aldrich in the State of Rhode Island and she is a resident of the State of Rhode Island.

28.    The defendants employed the plaintiff Bradley R. Talbot in the State of Vermont and he is a resident of the State of Vermont.

29.    The defendant, America Online, Inc. ("AOL"), is a corporate entity duly formed and incorporated pursuant to the laws of the State of Delaware.

30.    The defendant, America Online Communities, Inc. ("AOLC"), is a corporate entity duly formed and incorporated pursuant to the laws of the State of Delaware.

31.    The defendant AOLC is a corporate entity duly formed and incorporated pursuant to the laws of a State or jurisdiction other than the State of Delaware.

32.    The defendants have a business presence in New York State and/or otherwise conduct business and/or provide services in New York State and are subject to the personal jurisdiction of this Court and the Courts of the State of New York.

33.    The plaintiffs identified in paragraphs 3 through 28 (the "individual plaintiffs") bring the First Claim for Relief

5

herein on behalf of themselves, personally, under the FLSA and on behalf of all other persons similarly situated who are current or former employees of defendants who agree in writing to join the First Claim for Relief seeking recovery under the FLSA (the "FLSA class plaintiffs").

34.    The individual plaintiffs bring the Second Claim for Relief herein on behalf of themselves, individually, and all persons similarly situated (collectively the "State Law Class Plaintiffs"), as a class action pursuant to Federal Rules of Civil Procedure Rule 23, in respect to all claims that the individual plaintiffs and all persons similarly situated have against defendants as a result of the defendants' violations of various State laws requiring the payment of minimum wages and overtime wages.

35.    The individual plaintiffs bring the Third Claim for Relief herein on behalf of themselves, individually, and all persons similarly situated (collectively the "State Law Penalty Class Plaintiffs"), as a class action pursuant to Federal Rules of Civil Procedure Rule 23, in respect to all claims that the individual plaintiffs and all persons similarly situated have against defendants for the collection of specified statutory damages or allowable punitive damages beyond the payment of required minimum wages and overtime wages under State law, but only to the extent such statutory or punitive damages can be

sought on a class action basis, as a result of the defendants'
violations of various State laws requiring the payment of minimum
wages and overtime wages and/or the timely payment of wages owed.

STATEMENT OF FACTS

36.   The defendants are for profit businesses each having
gross revenue in excess of $500,000 per annum and are engaged in
the production of goods for interstate commerce and/or use and
handle goods which have moved in interstate commerce as such
terms are defined in the FLSA and are employers subject to the
jurisdiction of the FLSA.

37.   AOLC is and has always been a wholly owned subsidiary
of defendant AOL.

38.   The defendants have maintained and provided to members
of the general public, in return for the payment of a
subscription fee or usage charge, a service known as "America
Online" (the "AOL Service") which service is usually accessed via
telephone lines and is accessible throughout the United States
and has had in excess of ten million subscribers and the AOL
Service was provided as a for-profit business venture with the
defendants either earning profits from providing the AOL Service
and/or charging such subscription or usage charges which are
intended to make a profit from providing the AOL Service.

39.   The AOL Service provided by defendants allowed AOL
Service subscribers to access various unique Internet sites and

7

services which were restricted to AOL Service subscribers, these unique Internet sites and services include what are commonly called "chat rooms" where AOL Service subscribers can engage in online discussions with other AOL Service subscribers; "forums" where AOL Service subscribers can access and/or share information on particular issues of interest to them; and a myriad of other unique Internet sites and services for entertainment purposes and/or for educational purposes and/or for social purposes and/or numerous other purposes and uses which AOL Service subscribers enjoyed in exchange for the payment of their subscription fee.

40. The various unique Internet sites and services which defendants provided to AOL Service subscribers was critical to the defendants' business success, and many of its customers, and much of the defendant AOL's revenue and/or profits, come about as a direct result of the defendants' creation, maintenance, and operation of such unique Internet sites and services as part of the AOL Service.

41. In connection with maintaining, providing, servicing, and continuing such unique Internet sites and services as a part of its AOL Service, which was critical to the defendant AOL's profits and survival, the defendants had the individual plaintiffs, the FLSA class plaintiffs, and the State Law class plaintiffs (hereafter collectively the "plaintiffs"), through different programs and relationships that the defendants

8

consented to, encouraged and regulated, provide essential labor
to maintain, service and create such unique Internet sites and
services for the defendants' AOL Service which labor by the
plaintiffs consisted of the following amongst other things:

i) Maintaining and enforcing AOL's "Terms Of Service"
("TOS") which controlled how AOL Service subscribers were allowed
to use the AOL Service, which included reporting and/or taking
action against persons who violated the TOS by harassing other
AOL Service subscribers and/or engaging in other activities which
violated the TOS;

ii) Hosting "chat rooms" where they would moderate the
flow of discussion among AOL Service subscriber participants;

iii) Posting original work at the various unique AOL
Internet sites for the enjoyment of the AOL Service subscribers;

iv) Assisting AOL Service subscribers who had technical
problems with using the AOL Service or needed information on the
unique AOL Internet sites and services available to AOL Service
subscribers;

v) Training and recruiting other persons to assist in
the maintenance of AOL's unique Internet sites and services;

vi) Providing entertainment services for AOL Service
subscribers making use of certain unique AOL Internet sites;

vii) Assuring that the quality of the unique AOL
Internet sites met certain performance standards set by

9

defendants and correcting deficiencies in such standards;

       viii) Assisting in the billing of certain AOL Service subscribers who participated in special AOL Internet services which involved the payment of additional fees beyond the basic AOL subscription fee.

    42.  As part of defendants' programs and/or relationships alleged in paragraph 41, which programs and/or relationships bestowed what is commonly called "community leader" or "chatroom host" status on the plaintiffs, although these programs and relationships also went by many other names, defendant AOL used its wholly owned subsidiary AOLC to actually represent AOL and/or otherwise act on AOL's behalf or agent in respect to such programs and/or relationships.

    43.  While some of the relationships and programs alleged in paragraph 41 where nominally between the plaintiffs and AOLC, these relationships and programs benefitted AOL and were formed by AOL for the specific purpose of benefitting AOL as alleged herein.

    44.  The plaintiffs, as part of their participation in the relationships and programs alleged in paragraph 41, were required to follow certain rules and regulations and abide by certain conditions imposed by the defendants including, but not limited to, requirements that they provide a certain minimum number of hours of labor on a weekly or other basis; that they continue to

10

provide such labor on an uninterrupted basis or forfeit their
continued participation in such programs and relationships unless
they had a documented medical disability which temporarily
prevented them from providing such labor on an uninterrupted
basis; that they be closely supervised by other employees of the
defendants in the services they performed for the defendants;
that they provide regular reports on their activities to their
supervisors; that they submit to training and/or course(s) of
instruction from the defendants; that they be available to
receive, and follow, the detailed instructions of their
supervisors who were employees of the defendants; that they make
use of facilities and/or resources of the defendants in
undertaking the labor required of them; that they, personally,
render the services expected of them; that they follow a
sequence, order and/or schedule set by the defendants in
performing the labor required of them; that they could not earn
any profits from the labor they provided and that all ownership
rights to any products of their labor were held by the
defendants; that they abide by the broad terms of a
confidentiality agreement which prohibited them from discussing
their labor for the defendants; and in otherwise being required
to follow such rules, regulations and conditions which the
defendants enforced.

    45.    The defendants reserved the right to terminate the

plaintiffs at anytime and for any reason from the relationships and programs alleged in paragraph 41, which right the defendants frequently chose to exercise.

46.    The defendants provided the plaintiffs with the tools and means to perform the labor which was required of them as part of their participation in the relationships and programs alleged in paragraph 41, including, but not limited to, discounted or free access to the AOL service and other resources, such as computer memory and online server space, which was required to maintain and/or create the unique AOL Internet sites and services.

47.    The plaintiffs were not in the business of providing the labor and services they furnished to the defendants in connection with the programs alleged in paragraph 41 and did not have the means, tools and/or facilities to provide such labor and services except as employees of the defendants and the plaintiffs were employees of the defendants within the meaning of the FLSA and the State Laws alleged herein.

48.    The plaintiffs, pursuant to their participation in the relationships and programs alleged in paragraph 41, contemplated and understood they would receive compensation from the defendants for providing labor to the defendants, such compensation being in the form of reduced cost for and/or free access and use of the AOL service, which access and use the

12

plaintiffs were allowed to make for their own personal enjoyment, recreation and purposes and not just as part of their employment by the defendants, and that this compensation, while valuable, was not in compliance with the minimum wage and overtime compensation required to be paid to the plaintiffs by the defendants under the FLSA and/or applicable State Laws for the labor and services they provided to the defendants.

49.    The plaintiffs, as a result of their participation in the relationships and programs alleged in paragraph 41, contemplated they would receive compensation for providing labor and services to the defendants, and this understanding by the plaintiffs was intentionally fostered by the defendants in a number of ways, including, but not limited to, providing the plaintiffs with free or discounted use of the AOL service; advising the plaintiffs that they would receive preferential consideration for future employment with defendants in jobs which would pay compensation which equaled or exceeded the minimum compensation levels required by the FLSA and/or State Laws and that such preferential consideration would be granted more extensively if the plaintiffs worked additional hours beyond the minimum number of hours required by the programs and relationships detailed in paragraph 41; advising the plaintiffs that credit hours, meaning hours of free AOL access time which they received as a result of their participation in the programs

13

and relationships detailed in paragraph 41 could be transferred to other persons and used by other persons; and by limiting the disclosure of openings with the defendants for jobs which would pay compensation which equaled or exceeded the minimum compensation levels required by the FLSA and/or State Laws to persons who participated in the relationships and programs alleged in paragraph 41.

50.    The labor and services performed by the plaintiffs for the defendants was also performed by other persons who were paid employees of the defendants and the plaintiffs were performing the identical functions, duties and responsibilities of numerous other employees of the defendants such other employees of the defendants being paid wages which were in compliance with the minimum wages required by the FLSA and/or the State Laws alleged herein.

51.    The relationships and programs alleged in paragraph 41, created, within the meaning of the statutes alleged herein, an employer and employee relationship which obligated the defendants to pay to the plaintiffs minimum wages pursuant to State and Federal Law, the term minimum wages as used herein also including the requirement for the payment of time and one-half pay, or overtime pay, for work in excess of 41 hours a week as required by 29 U.S.C. § 207 and applicable State Laws.

52.    The defendant AOL, being fully aware of its liability

14

for minimum wages under State and Federal Law in respect to the relationships and programs alleged in paragraph 41 specifically and intentionally used defendant AOLC in its stead as the nominal party to such relationships and programs with the plaintiffs, in an attempt to shield AOL from any legal liability for such unpaid minimum wages and further that AOLC had no business purpose except to act as AOL's agent in respect to the plaintiffs in connection with the relationships and programs alleged in paragraph 41.

53.   The defendants AOL and AOLC jointly were the employers of the plaintiffs in that they jointly controlled the plaintiffs' work, engaged in joint decision making in respect to the plaintiffs' work, and the work provided by the plaintiffs pursuant to the plaintiffs' agreements with AOLC was solely for the benefit of AOL.

54.   The defendant AOL, by virtue of its control, domination and use of AOLC as its agent for the creation and maintenance of the relationships and programs alleged in paragraph 41, and the economic benefits it received from such programs and relationships, has assumed the status of an employer or joint employer of the plaintiffs within the meaning of the State and Federal laws alleged herein.

AS AND FOR A FIRST CLAIM FOR RELIEF
ON BEHALF THE INDIVIDUAL PLAINTIFFS AND
ALL OTHER PERSONS SIMILARLY SITUATED
PURSUANT TO THE FAIR LABOR STANDARDS ACT

15

55.  Plaintiffs repeat each and every allegation previously made herein.

56.  That the defendants failed to pay the individual plaintiffs the minimum compensation required under the FLSA for the work and labor they performed for the defendants as employees of the defendants.

57.  That the defendants failed to pay numerous other persons who are similarly situated to the individual plaintiffs the minimum compensation required under the FLSA for the work and labor such others similarly situated performed for the defendants as employees of the defendants.

58.  The labor and services performed by the individual plaintiffs and the persons similarly situated to the individual plaintiffs were directly essential to the shipment and use of various goods which moved in interstate commerce and/or such labor and services involved the use of goods which have moved in interstate commerce and all such persons therefor were engaged in commerce or in the production of goods for commerce as those terms are used in the FLSA while employed by the defendants.

59.  That the individual plaintiffs are owed unpaid minimum wages and overtime wages from the defendants pursuant to 29 U.S.C. §§ 206, 207 in an amount which will be determined upon a review of the defendants' records and/or at the trial of this action.

16

60.   That the exact number of persons similarly situated to the individual plaintiffs and their identities is unknown, but such persons, upon information and belief, number 10,000 or more and over 2,000 of such persons have filed written consents to joinder with this Court pursuant to 29 U.S.C. § 216(b), and are owed unpaid minimum wages and overtime wages from the defendants pursuant to 29 U.S.C. §§ 206, 207 in an amount that will be determined upon a review of the defendants' records and/or at the trial of this action.

61.   That the defendants' violations of the FLSA were willful.

62.   That as a result of the foregoing, the individual plaintiffs seek judgment against the defendants on their own behalf and on behalf of those similarly situated who file written consents to joinder in this action for all unpaid minimum wages and overtime wages owed by the defendants to the plaintiffs and such other persons similarly situated pursuant to 29 U.S.C. §§ 206, 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and attorney's fees, as provided for under 29 U.S.C. § 216(b).

AS AND FOR A SECOND CLAIM FOR RELIEF<br>
ON BEHALF OF THE INDIVIDUAL PLAINTIFFS AND<br>
ALL OTHER PERSONS SIMILARLY SITUATED PURSUANT<br>
TO APPLICABLE STATE MINIMUM WAGE LAWS

63.   Plaintiffs repeat each and every allegation previously

17

made herein.

64.  Pursuant to the State Laws of the States that the individual plaintiffs and the State Law Class Plaintiffs were employed in by the defendants the plaintiffs were entitled to hourly minimum wages and in some instances either daily or weekly overtime pay at one and one-half or twice the applicable State minimum hourly wage.

65.  Defendants failed to pay the minimum wages and in certain instances overtime wages due to the plaintiffs under the following applicable States' laws and the plaintiffs seek recovery under such State laws for all members of the State Law Class Plaintiffs covered by each such State's applicable laws and who were employed by the defendants in each such State along with one or more of the individual plaintiffs, the particular involved State statutes, administrative rulings, regulations, and wage orders under which relief is sought against the defendants by the plaintiffs including:

a) California Labor Code §§ 1182.11, 1197, 1194, and Wage Order number 4 and such other applicable Wage Orders issued pursuant to California's statutes and violations of California Business & Professions Code § 17200 in that the failure to pay wages required by the FLSA or other provisions of California law constitutes an unfair business practice under such statute;

b) Colorado Revised Statutes §§8-6-101 to 8-6-119 and

18

the Colorado Minimum Wage Order 22, 7 Colo. Code Regs. §§ 1103-1(1)-(22);

c) Connecticut General Statutes §§ 31-71a, 31-76;

d) Delaware Code Annotated § 902;

e) Illinois Comp. Stat. 105/12; 115/11;

f) Iowa Code § 91D;

g) Kentucky Rev. Stat. Ann. § 337.275; 803 Ky. Admin. Regs. 1:060 § 1;

h) Maine Rev. Stat. Ann. tit. 26, § 664;

i) Maryland Code Ann. Labor and Employment Art. §§ 3-401 to 431; 3-502; 3-505;

j) Massachusetts General Laws Chapters 151 and 149;

k) Minnesota Fair Labor Standards Act, Minn. Stat. §§ 177.21-177.44;

l) Nebraska Wage and Hour Act, Nebraska Revised Statutes §§ 48-1201-48-1209;

m) Nevada Revised Statutes 608.260, 608.018;

n) New Hampshire Revised Statute Ann. Ch. 279 §1; N.H. Rev. Stat. Ann. ch. 279 §21-a.;

o) New Jersey Minimum Wage Act, N.J.S.A. 34:11-56a25;

q) New Mexico Stat. Ann. §50-4-22 (A); N.M. Stat. Ann. §50-4-22 (C);

r) New York Minimum Wage Act, Labor Law Article 19, and the Wage Orders issued thereunder at 12 NYCRR 137-142;

s) Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code. Ann. § 4111, 4112 et. seq.;

t) Oregon Rev. Stat. 653.025; 653.261;

u) Pennsylvania State Wage and Hour Law, 34 Pa. Code §231.1, 35 P.S. §333.101; 43 P.S. §  333.104 and 43 P.S. §260.3;

v) Rhode Island Gen. Laws §28-12-2, 3(b); 28-12-4.1(a);

w) Vermont Statutes Annotated Title 21, Sec. 384;

x) Washington Rev. Code §49.46.020(4)(b); Wash. Rev. Code §49.46.130(1);

y) Wisconsin Admin. Code §272.03(1m)(a); Wis. Stat. §103.025(1)(c); Wis. Admin. Code § 274.03.

66.    That there are numerous persons (the "State Law Class Plaintiffs") who are similarly situated to the individual plaintiffs in respect to their claims under the foregoing State laws in that such similarly situated persons, performed substantial work, labor and services for the defendants for which such persons did not receive the minimum compensation required by such State laws, and upon information and belief the number of such persons exceeds 10,000 with at least 100 having worked for the defendant in each State specified in paragraph 65.

67.  That the persons similarly situated to the individual plaintiffs in paragraph 65 constitute a class of persons that is so numerous that joinder of all such persons individually is impractical.

20

68.   There are questions of law and fact common to the class that predominate over any questions affecting only individual members, specifically whether the defendants have any legal obligation to the class members under State law as a result of the defendants' failure to pay the minimum wages and overtime wages required by law and if so what is the extent of such obligation.

69.   The individual plaintiffs have complied with all prerequisites imposed by any State law to the maintenance of this action and the assertion of jurisdiction by this Court over such State law claims.

70.   The claims of the individual plaintiffs are typical of the claims of the above described class, in that the interests of the individual plaintiffs are co-extensive with the interests of the other members of the class, there is a lack of adverse interests between the individual plaintiffs and the other members of the class, and common questions exist.

71.   The individual plaintiffs will fairly and adequately protect the interests of the members of the State Law Class Plaintiffs.

72.   A class action is superior to other available methods for the fair and efficient adjudication of the class claims under the State laws at issue.

73.   That pursuant to Rule 23 of the Federal Rules of Civil

21

Procedure this Second Cause of Action should proceed as a class action in respect to the unpaid wages owed to the individual plaintiffs and the State Law Class Plaintiffs under the State laws at issue.

74.  The exact amount of wages owed to the individual plaintiffs and the State Law Class Plaintiffs is unknown but will be determined and stated after a review of the defendants' records and/or upon the trial of this matter.

75.  Wherefore, the individual plaintiffs, on behalf of themselves and the State Law Class Plaintiffs, seek a judgment against the defendants for all wages which should have been paid, but were not paid, to the individual plaintiffs and such class members pursuant to the State laws at issue, together with an award of attorney's fees, interest and costs as provided under such State laws.

                 AS AND FOR A THIRD CLAIM FOR RELIEF
              ON BEHALF OF THE INDIVIDUAL PLAINTIFFS AND
              ALL OTHER PERSONS SIMILARLY SITUATED PURSUANT
              TO APPLICABLE STATE WAGE PAYMENT PENALTY LAWS

76.  Plaintiffs repeat each and every allegation previously made herein.

77.  Pursuant to the State Laws of some of the States specified in paragraph 65 that the individual plaintiffs and the State Law Class Plaintiffs were employed in by the defendants the plaintiffs were entitled to additional monetary penalties because the defendants failed to pay the minimum wages or overtime wages

22

required by such States' laws and/or failed to pay such wages within the time frames required by such States' laws, such penalties requiring the payment of double the amount of unpaid wages or a specific additional percentage of unpaid wages or the payment of 30 days additional wages or some other specified statutory amount of damages.

78.  In this Third Claim for Relief plaintiffs seek to recover the monetary penalties under the State laws specified in paragraph 79 only to the extent that they may be collected in a class action case pursuant to Federal Rules of Civil Procedure Rule 23.

79.  The States that impose wage payment penalties that the plaintiffs seek to collect on in this Third Claim for relief, and the particular involved State statutes, administrative rulings, regulations, upon which such claims are based, include:

a) California Labor Code §§ 218.6, 1194.2, 203;

b) Connecticut General Statutes § 31-72;

c) Delaware Code Annotated §§ 1103, 1113;

d) Illinois Comp. Stat. 105/12a et. seq (Illinois Minimum Wage Law) and 115/1 et. seq. (Illinois Wage Payment Act);

e) Iowa Code § 91A.2(6);

f) Kentucky Rev. Stat. Ann. § 337.275;

h) Maine Rev. Stat. Ann. tit. 26, § 626-A, 670;

i)  Maryland Code Ann. Labor and Employment Art. §§ 3-

23

EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X Docket #: 99 Civ. 3785(KTD)

KELLY HALLISSEY, BRIAN A. WILLIAMS, JERRY
W. OSBORNE, ANTHONY E. McLAUGHLIN, THOMAS
S. BRUSKY, ARNOLD TIJERINA, JADE M.
BEETLE, CYNTHIA L. WEIS, MARE STERN,
SHERIE D. PEREZ, LYNN M. BEMONT, GREGORY
MACCORD, KELLY COSTIN, JAMES R. GORDON,
BRIAN D. MEYERS, ELIZABETH POGUE, HEATHER
TOWNSEND, KARL E. TEMPLE, PATRICIA A.
MEIGS, JULIE DAILY, WILLIAM CAMPBELL,
CARL K. RICH, GEORGIA WESTON, JANET
HAMLIN formerly known as JANET GREEN,
ANITA JUNE GRAY, RAYANNE M. BUCHIANICO          SECOND AMENDED
formerly known as RAYANNE M. BORAN,             COMPLAINT
CYNTHIA ALDRICH, DEBBIE THUNE, PAMELA
SPENCER JOHNSON, CHRISTOPHER W. HOUGHTON,
THOMAS LORGE, DONALD LOWE, TOM
ARMBRUSTER, and BRADLEY R. TALBOT,
Individually and on behalf of others
similarly situated,

                    Plaintiffs,

          -against-

AMERICA ONLINE, INC. and AMERICA
ONLINE COMMUNITIES, INC.

                    Defendants.

-----------------------------------X

          The Plaintiffs, by their attorneys, Leon Greenberg and

Michael Shen, as and for a Second Amended Complaint against the

defendants, state and allege, as follows:

          JURISDICTION, PARTIES AND PRELIMINARY STATEMENT

     1.     This Court has jurisdiction over the claims

presented on the First Claim for Relief herein pursuant to the

Act of June 25, 1938, ch 676, 52 Stat 1069, 29 USC Sections

201-219, known as the Fair Labor Standards Act ("the FLSA" or "the Act"), a law of the United States regulating interstate commerce, and specifically under the provisions of Section 16 of said act, as amended (29 U.S.C. § 216(b)).

2.  This Court has jurisdiction over the State Law claims presented in the Second and Third Claims for Relief pursuant to 28 U.S.C. § 1367(a).

3.  The defendants employed the plaintiffs Kelly Hallissey and Jade M. Beetle in the State of New York.

4.  The plaintiff Brian A. Williams was a resident of the State of Texas when this case was commenced.

5.  The defendants employed the plaintiff Thomas S. Brusky in the State of Wisconsin and he is a resident of that State.

6.  The plaintiff Anthony E. McLaughlin was a resident of the State of West Virginia when this case was commenced.

7.  The defendants employed the plaintiff Jerry W. Osborne in the States of Pennsylvania and Washington and he is a resident of the State of Washington.  The defendants employed the plaintiff Debbie Thune in the State of Washington and she is a resident of the State of Washington.

8.  The defendants employed the plaintiffs Arnold Tijerina, Mare Stern and Cynthia L. Weis in the State of California.

9. The defendants employed the plaintiff Sherrie D. Perez in the State of Colorado and she is a resident of the State of

Colorado.

10. The defendants employed the plaintiff Lynn M. Bemont in the State of Connecticut and she is a resident of the State of Connecticut.

11. The defendants employed the plaintiff Gregory Maccord in the State of Delaware and he is a resident of the State of Delaware.

12. The defendants employed the plaintiff Kelly Costin in the State of Kentucky and he is a resident of the State of Kentucky.

13. The defendants employed the plaintiffs James R. Gordon and Brian D. Meyers in the State of Illinois and they are residents of the State of Illinois.

14. The defendants employed the plaintiff Elizabeth Pogue in the State of Iowa and she is a resident of the State of Iowa.

15. The defendants employed the plaintiff Heather Townsend in the State of Maine and she is a resident of the State of Maine.

16. The defendants employed the plaintiff Karl E. Temple in the State of Maryland and he is a resident of the State of Maryland.

17. The defendants employed the plaintiff Patricia A. Meigs in the State of Massachusetts and she is a resident of the State of Massachusetts.

18.   The defendants employed the plaintiff Julie Daily in the State of Minnesota and she is a resident of the State of Minnesota.

19.    The defendants employed the plaintiff Janet Hamlin in the State of Nebraska and she is a resident of the State of Nebraska.

20. The defendants employed the plaintiff William Campbell in the State of Nevada and he is a resident of the State of Nevada.

21. The defendants employed the plaintiff Carl K. Rich in the State of New Hampshire and he is a resident of the State of New Hampshire.

22.   The defendants employed the plaintiffs Pamela Spencer Johnson, Christopher W. Houghton and Thomas Lorge in the State of New Jersey and they are residents of the State of New Jersey.

23.   The defendants employed the plaintiff Georgia Weston in the State of New Mexico and she is a resident of the State of New Mexico.

24.   The defendants employed the plaintiffs Donald Lowe and Tom Armbruster in the State of Ohio and they are residents of the State of Ohio.

25.   The defendants employed the plaintiff Anita June Gray in the State of Oregon and she is a resident of the State of Oregon.

4

26.    The defendants employed the plaintiff Rayanne M. Buchianico formerly known as Rayanne M. Boran in the State of Pennsylvania and she is a resident of the State of Pennsylvania.

27.    The defendants employed the plaintiff Cynthia Aldrich in the State of Rhode Island and she is a resident of the State of Rhode Island.

28.    The defendants employed the plaintiff Bradley R. Talbot in the State of Vermont and he is a resident of the State of Vermont.

29.    The defendant, America Online, Inc. ("AOL"), is a corporate entity duly formed and incorporated pursuant to the laws of the State of Delaware.

30.    The defendant, America Online Communities, Inc. ("AOLC"), is a corporate entity duly formed and incorporated pursuant to the laws of the State of Delaware.

31.    The defendant AOLC is a corporate entity duly formed and incorporated pursuant to the laws of a State or jurisdiction other than the State of Delaware.

32.    The defendants have a business presence in New York State and/or otherwise conduct business and/or provide services in New York State and are subject to the personal jurisdiction of this Court and the Courts of the State of New York.

33.    The plaintiffs identified in paragraphs 3 through 28 (the "individual plaintiffs") bring the First Claim for Relief

5

herein on behalf of themselves, personally, under the FLSA and on behalf of all other persons similarly situated who are current or former employees of defendants who agree in writing to join the First Claim for Relief seeking recovery under the FLSA (the "FLSA class plaintiffs").

34.    The individual plaintiffs bring the Second Claim for Relief herein on behalf of themselves, individually, and all persons similarly situated (collectively the "State Law Class Plaintiffs"), as a class action pursuant to Federal Rules of Civil Procedure Rule 23, in respect to all claims that the individual plaintiffs and all persons similarly situated have against defendants as a result of the defendants' violations of various State laws requiring the payment of minimum wages and overtime wages.

35.    The individual plaintiffs bring the Third Claim for Relief herein on behalf of themselves, individually, and all persons similarly situated (collectively the "State Law Penalty Class Plaintiffs"), as a class action pursuant to Federal Rules of Civil Procedure Rule 23, in respect to all claims that the individual plaintiffs and all persons similarly situated have against defendants for the collection of specified statutory damages or allowable punitive damages beyond the payment of required minimum wages and overtime wages under State law, but only to the extent such statutory or punitive damages can be

sought on a class action basis, as a result of the defendants'
violations of various State laws requiring the payment of minimum
wages and overtime wages and/or the timely payment of wages owed.

STATEMENT OF FACTS

36.   The defendants are for profit businesses each having
gross revenue in excess of $500,000 per annum and are engaged in
the production of goods for interstate commerce and/or use and
handle goods which have moved in interstate commerce as such
terms are defined in the FLSA and are employers subject to the
jurisdiction of the FLSA.

37.   AOLC is and has always been a wholly owned subsidiary
of defendant AOL.

38.   The defendants have maintained and provided to members
of the general public, in return for the payment of a
subscription fee or usage charge, a service known as "America
Online" (the "AOL Service") which service is usually accessed via
telephone lines and is accessible throughout the United States
and has had in excess of ten million subscribers and the AOL
Service was provided as a for-profit business venture with the
defendants either earning profits from providing the AOL Service
and/or charging such subscription or usage charges which are
intended to make a profit from providing the AOL Service.

39.   The AOL Service provided by defendants allowed AOL
Service subscribers to access various unique Internet sites and

7

services which were restricted to AOL Service subscribers, these unique Internet sites and services include what are commonly called "chat rooms" where AOL Service subscribers can engage in online discussions with other AOL Service subscribers; "forums" where AOL Service subscribers can access and/or share information on particular issues of interest to them; and a myriad of other unique Internet sites and services for entertainment purposes and/or for educational purposes and/or for social purposes and/or numerous other purposes and uses which AOL Service subscribers enjoyed in exchange for the payment of their subscription fee.

40.   The various unique Internet sites and services which defendants provided to AOL Service subscribers was critical to the defendants' business success, and many of its customers, and much of the defendant AOL's revenue and/or profits, come about as a direct result of the defendants' creation, maintenance, and operation of such unique Internet sites and services as part of the AOL Service.

41.   In connection with maintaining, providing, servicing, and continuing such unique Internet sites and services as a part of its AOL Service, which was critical to the defendant AOL's profits and survival, the defendants had the individual plaintiffs, the FLSA class plaintiffs, and the State Law class plaintiffs (hereafter collectively the "plaintiffs"), through different programs and relationships that the defendants

8

consented to, encouraged and regulated, provide essential labor
to maintain, service and create such unique Internet sites and
services for the defendants' AOL Service which labor by the
plaintiffs consisted of the following amongst other things:

      i) Maintaining and enforcing AOL's "Terms Of Service"
("TOS") which controlled how AOL Service subscribers were allowed
to use the AOL Service, which included reporting and/or taking
action against persons who violated the TOS by harassing other
AOL Service subscribers and/or engaging in other activities which
violated the TOS;

      ii) Hosting "chat rooms" where they would moderate the
flow of discussion among AOL Service subscriber participants;

      iii) Posting original work at the various unique AOL
Internet sites for the enjoyment of the AOL Service subscribers;

      iv) Assisting AOL Service subscribers who had technical
problems with using the AOL Service or needed information on the
unique AOL Internet sites and services available to AOL Service
subscribers;

      v) Training and recruiting other persons to assist in
the maintenance of AOL's unique Internet sites and services;

      vi) Providing entertainment services for AOL Service
subscribers making use of certain unique AOL Internet sites;

      vii) Assuring that the quality of the unique AOL
Internet sites met certain performance standards set by

defendants and correcting deficiencies in such standards;

      viii) Assisting in the billing of certain AOL Service subscribers who participated in special AOL Internet services which involved the payment of additional fees beyond the basic AOL subscription fee.

    42.  As part of defendants' programs and/or relationships alleged in paragraph 41, which programs and/or relationships bestowed what is commonly called "community leader" or "chatroom host" status on the plaintiffs, although these programs and relationships also went by many other names, defendant AOL used its wholly owned subsidiary AOLC to actually represent AOL and/or otherwise act on AOL's behalf or agent in respect to such programs and/or relationships.

    43.  While some of the relationships and programs alleged in paragraph 41 where nominally between the plaintiffs and AOLC, these relationships and programs benefitted AOL and were formed by AOL for the specific purpose of benefitting AOL as alleged herein.

    44.  The plaintiffs, as part of their participation in the relationships and programs alleged in paragraph 41, were required to follow certain rules and regulations and abide by certain conditions imposed by the defendants including, but not limited to, requirements that they provide a certain minimum number of hours of labor on a weekly or other basis; that they continue to

provide such labor on an uninterrupted basis or forfeit their
continued participation in such programs and relationships unless
they had a documented medical disability which temporarily
prevented them from providing such labor on an uninterrupted
basis; that they be closely supervised by other employees of the
defendants in the services they performed for the defendants;
that they provide regular reports on their activities to their
supervisors; that they submit to training and/or course(s) of
instruction from the defendants; that they be available to
receive, and follow, the detailed instructions of their
supervisors who were employees of the defendants; that they make
use of facilities and/or resources of the defendants in
undertaking the labor required of them; that they, personally,
render the services expected of them; that they follow a
sequence, order and/or schedule set by the defendants in
performing the labor required of them; that they could not earn
any profits from the labor they provided and that all ownership
rights to any products of their labor were held by the
defendants; that they abide by the broad terms of a
confidentiality agreement which prohibited them from discussing
their labor for the defendants; and in otherwise being required
to follow such rules, regulations and conditions which the
defendants enforced.

        45.    The defendants reserved the right to terminate the

plaintiffs at anytime and for any reason from the relationships and programs alleged in paragraph 41, which right the defendants frequently chose to exercise.

46.    The defendants provided the plaintiffs with the tools and means to perform the labor which was required of them as part of their participation in the relationships and programs alleged in paragraph 41, including, but not limited to, discounted or free access to the AOL service and other resources, such as computer memory and online server space, which was required to maintain and/or create the unique AOL Internet sites and services.

47.    The plaintiffs were not in the business of providing the labor and services they furnished to the defendants in connection with the programs alleged in paragraph 41 and did not have the means, tools and/or facilities to provide such labor and services except as employees of the defendants and the plaintiffs were employees of the defendants within the meaning of the FLSA and the State Laws alleged herein.

48.    The plaintiffs, pursuant to their participation in the relationships and programs alleged in paragraph 41, contemplated and understood they would receive compensation from the defendants for providing labor to the defendants, such compensation being in the form of reduced cost for and/or free access and use of the AOL service, which access and use the

12

plaintiffs were allowed to make for their own personal enjoyment, recreation and purposes and not just as part of their employment by the defendants, and that this compensation, while valuable, was not in compliance with the minimum wage and overtime compensation required to be paid to the plaintiffs by the defendants under the FLSA and/or applicable State Laws for the labor and services they provided to the defendants.

49.    The plaintiffs, as a result of their participation in the relationships and programs alleged in paragraph 41, contemplated they would receive compensation for providing labor and services to the defendants, and this understanding by the plaintiffs was intentionally fostered by the defendants in a number of ways, including, but not limited to, providing the plaintiffs with free or discounted use of the AOL service; advising the plaintiffs that they would receive preferential consideration for future employment with defendants in jobs which would pay compensation which equaled or exceeded the minimum compensation levels required by the FLSA and/or State Laws and that such preferential consideration would be granted more extensively if the plaintiffs worked additional hours beyond the minimum number of hours required by the programs and relationships detailed in paragraph 41; advising the plaintiffs that credit hours, meaning hours of free AOL access time which they received as a result of their participation in the programs

13

and relationships detailed in paragraph 41 could be transferred
to other persons and used by other persons; and by limiting the
disclosure of openings with the defendants for jobs which would
pay compensation which equaled or exceeded the minimum
compensation levels required by the FLSA and/or State Laws to
persons who participated in the relationships and programs
alleged in paragraph 41.

50.    The labor and services performed by the plaintiffs for
the defendants was also performed by other persons who were paid
employees of the defendants and the plaintiffs were performing
the identical functions, duties and responsibilities of numerous
other employees of the defendants such other employees of the
defendants being paid wages which were in compliance with the
minimum wages required by the FLSA and/or the State Laws alleged
herein.

51.    The relationships and programs alleged in paragraph
41, created, within the meaning of the statutes alleged herein,
an employer and employee relationship which obligated the
defendants to pay to the plaintiffs minimum wages pursuant to
State and Federal Law, the term minimum wages as used herein also
including the requirement for the payment of time and one-half
pay, or overtime pay, for work in excess of 41 hours a week as
required by 29 U.S.C. § 207 and applicable State Laws.

52.    The defendant AOL, being fully aware of its liability

14

for minimum wages under State and Federal Law in respect to the relationships and programs alleged in paragraph 41 specifically and intentionally used defendant AOLC in its stead as the nominal party to such relationships and programs with the plaintiffs, in an attempt to shield AOL from any legal liability for such unpaid minimum wages and further that AOLC had no business purpose except to act as AOL's agent in respect to the plaintiffs in connection with the relationships and programs alleged in paragraph 41.

53.    The defendants AOL and AOLC jointly were the employers of the plaintiffs in that they jointly controlled the plaintiffs' work, engaged in joint decision making in respect to the plaintiffs' work, and the work provided by the plaintiffs pursuant to the plaintiffs' agreements with AOLC was solely for the benefit of AOL.

54.    The defendant AOL, by virtue of its control, domination and use of AOLC as its agent for the creation and maintenance of the relationships and programs alleged in paragraph 41, and the economic benefits it received from such programs and relationships, has assumed the status of an employer or joint employer of the plaintiffs within the meaning of the State and Federal laws alleged herein.

AS AND FOR A FIRST CLAIM FOR RELIEF<br>
ON BEHALF THE INDIVIDUAL PLAINTIFFS AND<br>
ALL OTHER PERSONS SIMILARLY SITUATED<br>
PURSUANT TO THE FAIR LABOR STANDARDS ACT

15

55.  Plaintiffs repeat each and every allegation previously made herein.

56.   That the defendants failed to pay the individual plaintiffs the minimum compensation required under the FLSA for the work and labor they performed for the defendants as employees of the defendants.

57.  That the defendants failed to pay numerous other persons who are similarly situated to the individual plaintiffs the minimum compensation required under the FLSA for the work and labor such others similarly situated performed for the defendants as employees of the defendants.

58.  The labor and services performed by the individual plaintiffs and the persons similarly situated to the individual plaintiffs were directly essential to the shipment and use of various goods which moved in interstate commerce and/or such labor and services involved the use of goods which have moved in interstate commerce and all such persons therefor were engaged in commerce or in the production of goods for commerce as those terms are used in the FLSA while employed by the defendants.

59.  That the individual plaintiffs are owed unpaid minimum wages and overtime wages from the defendants pursuant to 29 U.S.C. §§ 206, 207 in an amount which will be determined upon a review of the defendants' records and/or at the trial of this action.

16

60.   That the exact number of persons similarly situated to the individual plaintiffs and their identities is unknown, but such persons, upon information and belief, number 10,000 or more and over 2,000 of such persons have filed written consents to joinder with this Court pursuant to 29 U.S.C. § 216(b), and are owed unpaid minimum wages and overtime wages from the defendants pursuant to 29 U.S.C. §§ 206, 207 in an amount that will be determined upon a review of the defendants' records and/or at the trial of this action.

61.   That the defendants' violations of the FLSA were willful.

62.   That as a result of the foregoing, the individual plaintiffs seek judgment against the defendants on their own behalf and on behalf of those similarly situated who file written consents to joinder in this action for all unpaid minimum wages and overtime wages owed by the defendants to the plaintiffs and such other persons similarly situated pursuant to 29 U.S.C. §§ 206, 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and attorney's fees, as provided for under 29 U.S.C. § 216(b).

                    AS AND FOR A SECOND CLAIM FOR RELIEF
                 ON BEHALF OF THE INDIVIDUAL PLAINTIFFS AND
                ALL OTHER PERSONS SIMILARLY SITUATED PURSUANT
                   TO APPLICABLE STATE MINIMUM WAGE LAWS

63.   Plaintiffs repeat each and every allegation previously

17

made herein.

64.  Pursuant to the State Laws of the States that the individual plaintiffs and the State Law Class Plaintiffs were employed in by the defendants the plaintiffs were entitled to hourly minimum wages and in some instances either daily or weekly overtime pay at one and one-half or twice the applicable State minimum hourly wage.

65.  Defendants failed to pay the minimum wages and in certain instances overtime wages due to the plaintiffs under the following applicable States' laws and the plaintiffs seek recovery under such State laws for all members of the State Law Class Plaintiffs covered by each such State's applicable laws and who were employed by the defendants in each such State along with one or more of the individual plaintiffs, the particular involved State statutes, administrative rulings, regulations, and wage orders under which relief is sought against the defendants by the plaintiffs including:

a) California Labor Code §§ 1182.11, 1197, 1194, and Wage Order number 4 and such other applicable Wage Orders issued pursuant to California's statutes and violations of California Business & Professions Code § 17200 in that the failure to pay wages required by the FLSA or other provisions of California law constitutes an unfair business practice under such statute;

b) Colorado Revised Statutes §§8-6-101 to 8-6-119 and

18

the Colorado Minimum Wage Order 22, 7 Colo. Code Regs. §§ 1103-1(1)-(22);

c) Connecticut General Statutes §§ 31-71a, 31-76;

d) Delaware Code Annotated § 902;

e) Illinois Comp. Stat. 105/12; 115/11;

f) Iowa Code § 91D;

g) Kentucky Rev. Stat. Ann. § 337.275; 803 Ky. Admin. Regs. 1:060 § 1;

h) Maine Rev. Stat. Ann. tit. 26, § 664;

i) Maryland Code Ann. Labor and Employment Art. §§ 3-401 to 431; 3-502; 3-505;

j) Massachusetts General Laws Chapters 151 and 149;

k) Minnesota Fair Labor Standards Act, Minn. Stat. §§ 177.21-177.44;

l) Nebraska Wage and Hour Act, Nebraska Revised Statutes §§ 48-1201-48-1209;

m) Nevada Revised Statutes 608.260, 608.018;

n) New Hampshire Revised Statute Ann. Ch. 279 §1; N.H. Rev. Stat. Ann. ch. 279 §21-a.;

o) New Jersey Minimum Wage Act, N.J.S.A. 34:11-56a25;

q) New Mexico Stat. Ann. §50-4-22 (A); N.M. Stat. Ann. §50-4-22 (C);

r) New York Minimum Wage Act, Labor Law Article 19, and the Wage Orders issued thereunder at 12 NYCRR 137-142;

19

s) Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code. Ann. § 4111, 4112 et. seq.;

t) Oregon Rev. Stat. 653.025; 653.261;

u) Pennsylvania State Wage and Hour Law, 34 Pa. Code §231.1, 35 P.S. §333.101; 43 P.S. §  333.104 and 43 P.S. §260.3;

v) Rhode Island Gen. Laws §28-12-2, 3(b); 28-12-4.1(a);

w) Vermont Statutes Annotated Title 21, Sec. 384;

x) Washington Rev. Code §49.46.020(4)(b); Wash. Rev. Code §49.46.130(1);

y) Wisconsin Admin. Code §272.03(1m)(a); Wis. Stat. §103.025(1)(c); Wis. Admin. Code § 274.03.

66.    That there are numerous persons (the "State Law Class Plaintiffs") who are similarly situated to the individual plaintiffs in respect to their claims under the foregoing State laws in that such similarly situated persons, performed substantial work, labor and services for the defendants for which such persons did not receive the minimum compensation required by such State laws, and upon information and belief the number of such persons exceeds 10,000 with at least 100 having worked for the defendant in each State specified in paragraph 65.

67.  That the persons similarly situated to the individual plaintiffs in paragraph 65 constitute a class of persons that is so numerous that joinder of all such persons individually is impractical.

20

68.   There are questions of law and fact common to the class that predominate over any questions affecting only individual members, specifically whether the defendants have any legal obligation to the class members under State law as a result of the defendants' failure to pay the minimum wages and overtime wages required by law and if so what is the extent of such obligation.

69.   The individual plaintiffs have complied with all prerequisites imposed by any State law to the maintenance of this action and the assertion of jurisdiction by this Court over such State law claims.

70.   The claims of the individual plaintiffs are typical of the claims of the above described class, in that the interests of the individual plaintiffs are co-extensive with the interests of the other members of the class, there is a lack of adverse interests between the individual plaintiffs and the other members of the class, and common questions exist.

71.   The individual plaintiffs will fairly and adequately protect the interests of the members of the State Law Class Plaintiffs.

72.   A class action is superior to other available methods for the fair and efficient adjudication of the class claims under the State laws at issue.

73.   That pursuant to Rule 23 of the Federal Rules of Civil

21

Procedure this Second Cause of Action should proceed as a class action in respect to the unpaid wages owed to the individual plaintiffs and the State Law Class Plaintiffs under the State laws at issue.

74.   The exact amount of wages owed to the individual plaintiffs and the State Law Class Plaintiffs is unknown but will be determined and stated after a review of the defendants' records and/or upon the trial of this matter.

75.   Wherefore, the individual plaintiffs, on behalf of themselves and the State Law Class Plaintiffs, seek a judgment against the defendants for all wages which should have been paid, but were not paid, to the individual plaintiffs and such class members pursuant to the State laws at issue, together with an award of attorney's fees, interest and costs as provided under such State laws.

               AS AND FOR A THIRD CLAIM FOR RELIEF
            ON BEHALF OF THE INDIVIDUAL PLAINTIFFS AND
            ALL OTHER PERSONS SIMILARLY SITUATED PURSUANT
            TO APPLICABLE STATE WAGE PAYMENT PENALTY LAWS

76.   Plaintiffs repeat each and every allegation previously made herein.

77.   Pursuant to the State Laws of some of the States specified in paragraph 65 that the individual plaintiffs and the State Law Class Plaintiffs were employed in by the defendants the plaintiffs were entitled to additional monetary penalties because the defendants failed to pay the minimum wages or overtime wages

required by such States' laws and/or failed to pay such wages
within the time frames required by such States' laws, such
penalties requiring the payment of double the amount of unpaid
wages or a specific additional percentage of unpaid wages or the
payment of 30 days additional wages or some other specified
statutory amount of damages.

78.  In this Third Claim for Relief plaintiffs seek to
recover the monetary penalties under the State laws specified in
paragraph 79 only to the extent that they may be collected in a
class action case pursuant to Federal Rules of Civil Procedure
Rule 23.

79.  The States that impose wage payment penalties that the
plaintiffs seek to collect on in this Third Claim for relief, and
the particular involved State statutes, administrative rulings,
regulations, upon which such claims are based, include:

a) California Labor Code §§ 218.6, 1194.2, 203;

b) Connecticut General Statutes § 31-72;

c) Delaware Code Annotated §§ 1103, 1113;

d) Illinois Comp. Stat. 105/12a et. seq (Illinois
Minimum Wage Law) and 115/1 et. seq. (Illinois Wage Payment Act);

e) Iowa Code § 91A.2(6);

f) Kentucky Rev. Stat. Ann. § 337.275;

h) Maine Rev. Stat. Ann. tit. 26, § 626-A, 670;

i)  Maryland Code Ann. Labor and Employment Art. §§ 3-

23

507;

j) Massachusetts General Laws Chapter 149 § 150;

k) Minnesota Fair Labor Standards Act, Minn. Stat.
§ 177.27;

l) Nevada Revised Statutes 608.040;

m) New Hampshire Revised Statute Ann. Ch. 279 §1; N.H.
Rev. Stat. Ann. ch. 275, §53;

n) New Jersey Rules of Court Rule 4:32-1, N.J.S.A.
34:11-56a25, New Jersey Punitive Damages Act, N.J.S.A. § 2A:15-
5.12;

o) New Mexico Stat. Ann. §50-4-26(B)(1);

p) Oregon Rev. Stat. 652.230;

q) Pennsylvania Cons. Stat. §260.10;

r) Vermont Statutes Ann. Title 21, § 347, § 395;

s) Washington Rev. Code §49.52.050,070;

t) Wisconsin Stat. §109.11(2)(a).

80.    That there are numerous persons (the "State Law
Penalty Class Plaintiffs") who are similarly situated to the
individual plaintiffs in that such persons were not paid wages by
the defendants required under one or more of the State laws set
forth in paragraph 65 and as a result are entitled to wage
payment penalties or punitive damages under one or more of the
State laws set forth in paragraph 79, and upon information and
belief the number of such persons in total exceeds 10,000 with at

24

least 100 having worked for the defendants in each State
identified in paragraph 79.

81.   That the persons similarly situated to the individual
plaintiffs in paragraph 79 constitute a class of persons that is
so numerous that joinder of all such persons individually is
impractical.

82.   There are questions of law and fact common to the class
which predominate over any questions affecting only individual
members, specifically whether the defendants have any legal
obligation to the class members under State wage payment penalty
or punitive damages laws and if so what is the extent of such
obligation.

83.   The individual plaintiffs have complied with all
prerequisites imposed by any State law to the maintenance of this
action and the assertion of jurisdiction by this Court over such
State wage payment penalty law and punitive damages claims.

84.   The claims of the individual plaintiffs are typical of
the claims of the above described class, in that the interests of
the individual plaintiffs are co-extensive with the interests of
the other members of the class, there is a lack of adverse
interests between the individual plaintiffs and the other members
of the class, and common questions exist.

85.   The individual plaintiffs will fairly and adequately
protect the interests of the members of the State Law Class

Plaintiffs.

86.   A class action is superior to other available methods for the fair and efficient adjudication of the class claims under the State wage payment penalty and punitive damages laws at issue.

87.   That pursuant to Rule 23 of the Federal Rules of Civil Procedure this Third Claim for Relief should proceed as a class action in respect to the State law wage payment penalty and punitive damages claims of the individual plaintiffs and the State Law Penalty Class Plaintiffs under the State wage payment penalty and punitive damages laws at issue.

88.   The exact amounts owed to the individual plaintiffs and the State Law Penalty Class Plaintiffs is unknown but will be determined and stated after a review of the defendants' records and/or upon the trial of this matter.

89.   Wherefore, the individual plaintiffs, on behalf of themselves and the State Law Penalty Class Plaintiffs, seek a judgment against the defendants as alleged herein for the penalties and punitive damages owed to the individual plaintiffs and such class members pursuant to the State wage payment penalty and punitive damages laws at issue, together with an award of attorney's fees, interest and costs as provided under such State laws.

Plaintiffs demand a trial by jury on all issues so triable.

Dated: Las Vegas, Nevada
       February 25, 2009

                              Yours, etc.,


                              _____
                              Leon Greenberg
                              Michael Shen
                              Attorneys for Plaintiffs
                              633 South 4th Street #4
                              Las Vegas, Nevada 89101
                              (702) 383-6085

27

EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
Kelly Hallissey, et al.,          :
                                  :
                  Plaintiffs,     :
                                  :
        -against-                 :        99-CIV-3785 (KTD)
                                  :        MEMORANDUM & ORDER
America Online, Inc., et al.,     :
                                  :
                  Defendants.     :
----------------------------------X

KEVIN THOMAS DUFFY, U.S.D.J.:

Plaintiffs Kelly Hallissey and ten other individuals ("Plaintiffs") allege that they were employees of Defendants America Online, Inc. and America Online Communities, Inc. ("Defendants" or "AOL"). Plaintiffs claim that Defendants' failure to pay them wages during their term of employment contravened the Fair Labor Standards Act ("FLSA") and the New York State Minimum Wage Act. Plaintiffs further contend that Defendants owe them unpaid minimum wages and overtime wages.

AOL moves to dismiss: (1) Plaintiffs' FLSA claims pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that Plaintiffs were not "employees" as defined under the FLSA; and (2) Plaintiffs' remaining state law claims on the grounds that supplemental jurisdiction should not be exercised.

AOL's motions are DENIED.

1

I.    **BACKGROUND**

AOL provides an internet service known as "America Online" ("AOL Service") in exchange for a subscription fee. This service provides subscribers with access to various internet sites and electronic services. These internet sites and services include: (1) "chat rooms," where subscribers can engage in online discussions with one another; (2) "forums," where subscribers can access or share various information of interest to them; and (3) a variety of other options (such as fantasy sports leagues and trivia contests).

Plaintiffs are all former participants in AOL's "community leader" program. Generally speaking, community leaders provided services to various "communities" on the AOL Service. These communities consist of internet sites and services that deal with a variety of subjects of interest to its subscribers. Subscribers who are interested in a particular subject access the site and, in effect, become part of the community relating to that subject by participating in the community's chat rooms, forums, or other activities.

The precise roles and duties of Plaintiffs and other community leaders varied considerably. Plaintiffs' duties included, for example: managing and updating message boards, moderating chat rooms, serving as "guides" to AOL subscribers, updating content on forums, serving as online tutors, and

2

MAR-20-2006(MON) 13:42    Michael Shen & Associates    (FAX)212 227 2714    P. 004/033

Case 1:99-cv-03785-KTD    Document 2632-2    Filed 05/19/09    Page 59 of 105.

running other activities such as fantasy sports leagues or
trivia contests.  Some Plaintiffs were more specialized and had
administrative duties.  Plaintiff Simpson, for example, was
responsible for, among other things, determining whether AOL's
library contained material that infringed upon copyrighted
materials.  Plaintiff Tijerina's duties included checking the
validity of certain charges assessed to customers' accounts.
For the most part, Plaintiffs were assigned certain "shifts"
that needed to be filled.  To moderate a chat room, for example,
Plaintiffs needed to open the chat session at a particular time,
monitor the session, close it, and then submit a report about
the session to their paid AOL supervisors.  Plaintiffs who
functioned as "guides" would typically respond to online "pages"
from their AOL supervisors who would direct them to assist other
volunteers or regular subscribers who needed assistance.  Some
guides stayed in "Help Rooms" and would provide answers to
subscribers' questions.  Some Plaintiffs came to be "Assistant
Room Managers" and would supervise and train other AOL
volunteers.

AOL provided Plaintiffs with greater powers than regular
subscribers.  For example, Plaintiffs who moderated chat rooms
had the power to "gag" certain members by forcing the members to
take a five minute "time out" if they engaged in inappropriate
online conduct.  Some Plaintiffs also had the power to delete or

3

change the content of certain AOL forums.  AOL also provided

Plaintiffs with certain encryption keys so they could get the

necessary access to certain message boards.  Likewise, many

Plaintiffs were trained in the use of Rainman, AOL's proprietary

software.

Plaintiffs also emphasize that they spent a substantial

amount of their time (approximately one-third) offline,

performing administrative tasks that, as noted supra, included

writing reports about chat sessions and instances where

subscribers needed to be "gagged."  Plaintiffs also contend that

AOL made them submit weekly summaries of the hours they

volunteered and the duties they performed.

Plaintiffs, for the most part, were not paid actual wages

for their efforts.  Indeed, AOL referred to these community

leaders as "volunteers."  AOL nonetheless provided Plaintiffs,

and other community leaders, with a variety of benefits in

recognition of their efforts.  After December 1996 or January

1997, these benefits included free AOL access, a leather AOL

compact disc case, discounts at the AOL employee store, expanded

space for web pages, and free anti-virus software.[1]

---

[1] Prior to December 1996, AOL provided its "volunteers" with two hours of free
AOL time for every hour they volunteered.  These benefits could be
substantial, as AOL had an hourly pricing scheme at the time, which charged
users $3.95 per hour.  Around January 1997, AOL switched to a flat rate fee
of approximately twenty dollars per month.

Plaintiffs maintain that these online communities enabled
AOL to retain and attract subscribers and allowed it to reap
profits from advertising--the rates for which were based on an
internet site's level of traffic.  Plaintiffs further allege
that these communities could not have functioned (or at least
could not have functioned as well) without the community
leaders.  Among other things, Plaintiffs contend that there were
not enough paid employees to perform the community leaders'
duties.  Plaintiffs maintain that they performed some of the
same duties as AOL's paid employees.  Plaintiffs also assert
that AOL's competitors pay their employees to perform the same
functions for which Plaintiffs "volunteered."

## II.  **PROCEDURAL HISTORY**

By stipulation in 2000, the parties decided to brief the
issue of subject matter jurisdiction before proceeding with any
additional discovery.  The parties agreed that "[f]or purposes
of discovery and briefing on the issue of subject matter
jurisdiction . . . the record shall be limited to those
individuals who are (a) identified as named plaintiffs on or
before June 1, 2000, as set forth in paragraph 2 through 4, and
(b) not subject to a motion to dismiss by defendants as set
forth in paragraphs 6 and 7."  (Joint Stipulation Regarding
Joinder of Consent Filers Prior to Determination of Court's

Subject Matter Jurisdiction, Defs.' Mem. Ex. B ¶ 9.)  AOL filed
this motion before Judge Daniels in December 2000, and briefing
was completed in March 2001.  Eleven Plaintiffs presented
evidence in connection with this motion.

Subsequently, a series of related actions were filed in
other district courts across the country.  AOL filed unopposed
motions to transfer these actions to the Southern District of
New York pursuant to 28 U.S.C. § 1407.  In April 2002, the
Judicial Panel on Multidistrict Litigation transferred two
actions (one pending in the District of New Jersey and one
pending in the Southern District of Ohio) to the Southern
District of New York.  No motions are pending concerning these
two related cases.  In late December 2004, these cases were re-
assigned from Judge Daniels to me.

## III. STANDARD OF REVIEW

In resolving Defendants' Rule 12(b)(1) motion, both parties
agree that the governing standard is that set forth under Rule
56, governing motions for summary judgment.[2]  Granting a summary·
judgment motion is appropriate if "the pleadings, depositions,

---

[2] Challenges to subject matter jurisdiction may attack either the facial
sufficiency of the pleadings in the complaint or the existence of subject
matter jurisdiction in fact, irrespective of the substantive causes of action
asserted in the pleadings.  See Garcia v. Copenhaver, Bell & Associates,
M.D.'s, P.A., 104 F.3d 1256, 1260-61 (11th Cir. 1997).  AOL has clearly
presented a factual, rather than facial, challenge to subject matter
jurisdiction.  Where, as here, such challenges also implicate the merits of a
plaintiff's action, the motion may be evaluated under the same standard as
that for summary judgment.  See id. at 1266.

answers to interrogatories, and admissions on file, together
with the affidavits, if any, show that there is no genuine issue
as to any material fact and that the moving party is entitled to
a judgment as a matter of law." Fed. R. Civ. P. 56(c). A
genuine issue of material fact exists "if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986) (citation omitted).

In deciding a motion for summary judgment, all evidentiary
material submitted must be viewed in the light most favorable
to, and all inferences must be drawn in favor of, the nonmoving
party. See, e.g., Consarc Corp. v. Marine Midland Bank, N.A.,
996 F.2d 568, 572 (2d Cir. 1993). After drawing all such
inferences in the non-movant's favor, summary judgment will be
properly granted only "when no rational jury could find in favor
of the nonmoving party because the evidence to support its case
is so slight." Gallo v. Prudential Residential Servs., 22 F.3d
1219, 1224 (2d Cir. 1994) (citation omitted).

Although an individual's classification as an employee or
volunteer under the FLSA is a question of law, a court must
examine the "objective facts surrounding the services performed
to determine whether the totality of the circumstances supports
a holding that, under the statute and under the regulations, the
[plaintiffs] are volunteers." Cleveland v. City of Elmendorf,

388 F.3d 522, 528 (5th Cir. 2004) (citing Tony & Susan Alamo

Found. v. Sec'y of Labor, 471 U.S. 290, 295 (1985)("Alamo")).

Accordingly, any genuine issues of material fact relating to the

totality of the circumstances of Plaintiffs' work for Defendants

will preclude entry of summary judgment. See, e.g., Carter v.

Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)

(requiring a case by case analysis of employment status under

the FLSA and finding error when a district court granted summary

judgment because it afforded "undue weight" to a given factor).

On the present record, I conclude that genuine issues of

material fact exist, which preclude me from granting Defendants'

motion.

## IV. ANALYSIS

The parties vigorously dispute which test I should apply in

determining whether Plaintiffs were employees.  AOL contends

that the inquiry should focus on the following factors: (1)

whether the work is for the benefit of the plaintiff; (2)

whether the plaintiff displaces regular employees, or merely

works under their close observation and supervision; (3) whether

the plaintiff derives a substantial advantage from the work

performed; (4) whether the plaintiff is entitled to a job at the

completion of his work; and (5) whether AOL and the plaintiff

understand that the plaintiff is not entitled to wages for the

services rendered.  (See Defs.' Mem. at 27 (citations omitted).)
This test, derived from a law review article and modified by
AOL, was suggested as a potential "starting point" in a footnote
of one court's decision.  Todaro v. Township of Union, 27 F.
Supp. 2d 517, 539 n.8 (D.N.J. 1998) ("Todaro I") (citing Kelly
Jordan, Note, FLSA Restrictions on Volunteerism: The
Institutional and Individual Costs in a Changing Economy, 78
Cornell L. Rev. 302 (1993)).[3]

Plaintiffs maintain that the test should focus on the
"economic realities" of the situation, particularly on the
following factors: (1) whether an economic benefit flowed to the
employer from the employee's work; (2) the degree of "economic
integration" between the employee's work and the employer's
commercial operations; and (3) whether there was an implicit or
explicit "expectation of compensation" flowing to the employee
from the employer.  (See Pls.' Mem. at 12-13.)[4]

---

[3] The plaintiffs in the Todaro case were ultimately found to be volunteers
under the FLSA, however, that case and the cases cited by that court such as
Rogriquez v. Township of Holiday Lakes, 866 F. Supp. 1012 (S.D. Tex. 1994)
and Benshoff v. City of Virginia Beach, 9 F. Supp. 2d 610 (E.D. Va. 1998),
involved municipal defendants, which permitted a finding that those
individuals were volunteers under the FLSA, which permits volunteerism for
public agencies.  See Todaro v. Township of Union, 40 F. Supp. 2d 226, 229
(D.N.J. 1999) ("Todaro II") (excluding a volunteer for "a public agency which
is a State [or] a political subdivision of a State . . . ." from FLSA's
regulatory definition of an "employee") (quoting 29 U.S.C. § 203(e)(4)(A));
see also 29 C.F.R. § 553.101 (carving out an FLSA exception for "service for
a public agency").  Moreover, the Todaro court never actually employed the
test suggested by AOL.

[4] As discussed infra, the economic realities test considers whether a
purported employee was "dependent" on an employer.  The Second Circuit has
listed (in the context of independent contractors) the following factors as

As set forth below, I find it unnecessary, at this time, to
adopt a precise formulation of the appropriate test for purposes
of this motion because genuine issues of material fact prevent
me from granting it under either proposed test.

A.    **Appropriate Test for Determining Whether Plaintiffs
are Employees**

The parties' dispute over what test I should apply is not
surprising, given that the FLSA broadly defines "employee" as
"any individual employed by an employer," 29 U.S.C. § 203(e)(1)
and an "employer" as "any person acting directly or indirectly
in the interest of an employer in relation to an employee," id.
§ 203(d).  These amorphous definitions were intentional, as the
FLSA is a "remedial" statute, "written in the broadest possible
terms so that the minimum wage provisions would have the widest
possible impact in the national economy." Carter, 735 F.2d at

relevant to this inquiry: "(1) the degree of control exercised by the
employer over the workers, (2) the workers' opportunity for profit or loss
and their investment in the business, (3) the degree of skill and independent
initiative required to perform the work, (4) the permanence or duration of
the working relationship, and (5) the extent to which the work is an integral
part of the employer's business." Brock v. Superior Care, Inc., 840 F.2d
1054, 1058-59 (2d Cir. 1988).  AOL argues that this test should not apply
where, as here, the plaintiffs purportedly are volunteers.  Some courts have
agreed with this position, concluding that "[t]he economic realities test
'presupposes a real economic exchange between the parties,' and therefore is
not as useful when attempting to distinguish volunteers from employees, where
'there is no economic relation to measure.'" Todaro I, 27 F. Supp. 2d at 534
(quoting Rodriguez, 866 F. Supp. at 1020).

While some of the Brock factors may be irrelevant to the instant case, there
are no finite tests to consider in resolving issues of employment under the
FLSA.  See Brock, 840 F.2d at 1059 ("The factors that have been identified by
various courts in applying the economic reality test are not exclusive. Since
the test concerns the totality of the circumstances, any relevant evidence
may be considered, and mechanical application of the test is to be avoided.")
(citations omitted).

12.    Thus, the FLSA "must not be interpreted or applied in a
narrow, grudging manner," <u>Tennessee Coal, Iron & R.R. Co. v.
Muscoda Local</u>, 321 U.S. 590, 597 (1944), and exemptions from
FLSA coverage are "to be narrowly construed against the
employers seeking to assert them," <u>Arnold v. Ben Kanowsky, Inc.</u>,
361 U.S. 388, 392 (1960).[5]

In light of these broad definitions, courts have recognized
that "[t]he employer-employee relationship does not lend itself
to rigid per se definitions . . . ." <u>Reich v. ConAgra, Inc.</u>,
987 F.2d 1357, 1361 (8th Cir. 1993) (internal quotation
omitted).  Rather, it "depends upon the circumstances of the
whole activity." <u>Id.</u>; <u>see also</u> <u>Cleveland</u>, 388 F.3d at 528
("[T]he definition of volunteer should be applied in a common-
sense manner, which takes into account <u>the totality of the
circumstances</u> surrounding the relationship between the
individual providing services and the entity for which the
services are provided.") (emphasis added).

The difficulty in fashioning a bright-line test to
determine whether an individual is an employee or a volunteer
under the FLSA has led other courts to deny summary judgment
based on their inability to clearly categorize the individuals

---

[5] Congress created one such exemption in 1985, excluding from the definition
of employee "any individual who volunteers to perform services for a public
agency which is a State, a political subdivision of a State, or an interstate
governmental agency," if certain additional conditions are met. 29 U.S.C. §
203(e)(4)(A). AOL's efforts to describe how Plaintiffs may have met some of
these additional conditions are misplaced since it is not a public agency.

as one or the other.  In Todaro I, for example, the court found
that:

> the economic realities test [is] ineffectual
> in the context of distinguishing employees
> from volunteers and notes the need for
> implementing more useful standards to be used
> in this type of situation.  In the absence of
> such standards, the Court is reluctant to
> develop or impose its own test. For the above
> reasons, the Court will deny plaintiffs'
> motion for summary judgment . . .

27 F. Supp. 2d at 538 (footnote omitted).  I similarly conclude
that there are genuine issues of material fact relating to
factors described by both parties and by controlling authorities
that preclude me from granting AOL's motion.

    B.    Expectation of Compensation

    Whether Plaintiffs had an express or implied expectation of
compensation is a crucial inquiry in this case.  After all,
"[t]he Act's purpose as to wages was to insure that every person
whose employment contemplated compensation should not be
compelled to sell his services for less than the prescribed
minimum wage."  Walling v. Portland Terminal Co., 330 U.S. 148,
152 (1947).  In McQueen v. Licata's Seafood Restaurant, 1992 WL
73322, *3 (E.D. La. Mar. 30, 1992), the court noted that while
"[t]he question of whether a worker is an employee for purposes
of the FLSA is a question of law. . . . it is heavily dependent
upon the factual determination of whether plaintiff expected to
receive compensation."

12

It is undisputed that the Plaintiffs did not have an express agreement for compensation with AOL.[6]  For FLSA purposes, however, an expectation of compensation may be implied. Accordingly, labels assigned by an employer or adopted by the individuals are not dispositive.  In <u>Alamo</u>, the Supreme Court held that a nonprofit religious foundation's workers were employees, notwithstanding the fact that "the Secretary [of Labor] had failed to produce any past or present associate of the Foundation who viewed his work in the Foundation's various commercial businesses as anything other than volunteering his services to the Foundation."  471 U.S. at 300 (citation and quotation omitted).  The <u>Alamo</u> Court noted "[t]hat the associates themselves vehemently protest coverage under the Act makes this case unusual, but the purposes of the Act require that it be applied <u>even to those who would decline its protections</u>."  <u>Id.</u> at 302 (emphasis added).  The Court noted that the converts in that case received a substantial variety of benefits from the nonprofit--including food, clothing, shelter, and small stipends.  Moreover, the converts were "entirely dependent upon the Foundation for long periods, in some cases several years."  <u>Id.</u> at 301 (quotation omitted).  As a result, "the fact that the compensation was received primarily in the

---

[6] Notably, Plaintiffs Simpson and Williams claim that they eventually <u>were</u> promised actual wages in exchange for their services. (<u>See</u> Pls.' Statement of Facts ¶ 84.)  Both maintain that they were never paid in accordance with these representations.  (<u>See id.</u>)

form of benefits rather than cash is in this context immaterial." Id. The benefits created an expectation of compensation and, notwithstanding the converts' protests, rendered them employees.[7] Thus, while AOL's categorization of Plaintiffs as "volunteers" is certainly relevant to my inquiry, it does not, standing alone, carry the day.

I find this case distinguishable from Alamo in that none of the Plaintiffs were "dependent" on AOL for their needs such as food, clothing and shelter, but that is not the only way to generate an expectation of compensation. If that were the law, no employer of part-time employees or of independently wealthy persons who choose to work would ever be bound by the FLSA. In this case, many Plaintiffs claim to have volunteered substantial hours in order to obtain a full-time, paid position with AOL. In essence, Plaintiffs contend that "volunteering" for AOL became an unwritten but well-known prerequisite for obtaining a paid position with AOL.

---

[7] Not all benefits render the recipients employees. Courts also focus on the purpose of the parties' relationship. See Williams v. Strickland, 87 F.3d 1064, 1067 (9th Cir. 1996) (finding plaintiff's "work therapy was not performed in exchange for in-kind benefits, but rather was performed to give him a sense of self-worth, accomplishment, and enabled him to overcome his drinking problems and reenter the economic marketplace."). Likewise, courts have held that residential advisers in a university are not employees, see Marshall v. Regis Educational Corp., 666 F.2d 1324, 1327-28 (10th Cir. 1981), and that students performing duties in the cafeteria are not employees, see Bobilin v. Bd. of Educ., Hawaii, 403 F. Supp. 1095, 1109 (D. Haw. 1975). Both Marshall and Bobilin focused on the underlying educational purpose of the students' work. See, e.g., Marshall, 666 F.2d at 1327-28 ("The query is whether the RA's at Regis are more like sales clerks or more like students in other campus programs receiving financial aid.").

14

One Plaintiff, for example, testified that an AOL employee
told him that "[his] best chance of getting hired on was to
perform more jump-ins and work more hours . . . ." (Defs.' Ex. G
at 72), and that "in order to be considered for [a paid job]
that [he] had to show the extra effort and put in the additional
hours." Id. at 82.  Other Plaintiffs had similar experiences:

> When I specifically inquired about a
> particular paid job with defendants I was
> explicitly told by two of defendants'
> employees that making a significant
> contribution as an unpaid 'volunteer' was
> the best way to get hired for a paid
> position with the defendants. . . . I was
> told by my superior, a paid employee of
> defendants, that this 'volunteer' job would
> be a step towards getting a paid job with
> the defendants.

(Pls.' Ex. G at 9; see also Pls.' Ex. G at 9 ("My superiors
encouraged me to work harder and longer hours and told me that
doing so would increase my chances of getting a paid job with
[AOL.]"); Pls.' Ex. F at 10.)  One Plaintiff claims to have been
told "numerous times, by my superiors, who were employees of the
defendants, that if [my community] proved profitable I would get
a paid job with defendants."  (Pls.' Ex. J ¶ 10.)

Some Plaintiffs also testified that many of AOL's paid job
openings were only posted to AOL volunteers, or at least in a
fashion most easily accessible to them.  (See, e.g., Pls.' Ex. F
at 10.)  Many Plaintiffs also noted that "jobs with the
defendants frequently required extensive experience as a

volunteer in a particular activity and it was common knowledge
that defendants hired their 'paid' online staff almost
exclusively from the ranks of their unpaid 'volunteer' staff."
(See, e.g., Pls.' Ex. I at 10.)  Indeed, former AOL employees
echoed these sentiments.  (See, e.g., Pls.' Ex. B at 8
("Defendants would post job openings in such a fashion that only
community leaders were aware of such job openings."); Pls.' Ex.
C at 9 ("Many of defendants' 'forum leader' or 'room manager'
jobs were filled based on an existing 'forum leader' or 'room
manager's recommendation of a particular 'volunteer.'").)

    This evidence permits the inference that AOL used its
superior bargaining power to require a certain amount of
"volunteering" before an individual would be considered for a
paid position.  Such a practice could have induced the
volunteers to work more hours on AOL's behalf, and in turn
undermined a fundamental purpose of the FLSA.  See Todaro II, 40
F. Supp. 2d at 229 (referencing the "impermissible use of
benefits as an inducement to obtain 'volunteer' services while
avoiding applicable minimum wage laws"); see also Alamo, 471
U.S. at 302 (noting that "[i]f an exception to the Act were
carved out for employees willing to testify that they performed
work 'voluntarily,' employers might be able to use superior
bargaining power to coerce employees to make such assertions, or
to waive protections under the Act").

Plaintiffs' allegations take on added importance in light
of AOL's status as a for-profit entity.  As the court noted in
Isaacson v. Penn Community Services, Inc., 450 F.2d 1306, 1309-
10 (4th Cir. 1971), nonprofits (and necessarily public agencies)
are of a much different character than for-profit corporations.
Because the former serve the public good, "[i]n the broad sense
. . . any benefit to [nonprofits] was benefit to the public at
large--a benefit of a different nature than that of a for-profit
enterprise."  Id.  At for-profit corporations, however, "such
employers might coerce [volunteers] into providing free services
by suggesting that volunteer service will enhance the prospect
of obtaining a paid position at the corporation at some later
date."  Jordan, supra, at 330.  There is a risk that
"[c]orporations could feign such a purpose and yet hire the
volunteers purely to maximize profits, with no intention of ever
hiring the workers for paid positions."  Id.  AOL argues that
the Plaintiffs were not necessarily entitled to a paid position
at the completion of their employment, but I find that this case
presents questions of fact regarding the extent of AOL's
promises of future compensation and practices of inducing
additional "volunteerism" by making those paid positions
contingent upon such work.

Thus, while I do not believe that Plaintiffs were dependent
on AOL like the plaintiffs in Alamo, I do believe material

17

issues of fact exist regarding Plaintiffs' purpose for
volunteering and AOL's purported policy of inducing Plaintiffs
to volunteer more hours by providing certain benefits and
promising future compensation.  I am therefore not prepared to
rule that a reasonable finder of fact could not find that
Plaintiffs had a reasonable expectation of compensation.[8]

C.   Were Plaintiffs Integral to AOL

Also relevant to my inquiry is whether Plaintiffs were an
integral part of AOL's business.  The relevance of this inquiry,
urged by Plaintiffs, is also explicitly acknowledged by AOL.[9]  As
the Second Circuit has noted, there are purposes behind the FLSA
other than "improv[ing] the living conditions, bargaining
strength vis-à-vis employers, and general well-being of the
American worker."  Carter, 735 F.2d at 13.  These include "the
establishment of minimum standards in the workplace" which
"results in the elimination of unfair competition, not only

---

[8] AOL directs my attention to Todaro II, 40 F. Supp. 2d 226, and some related
cases.  Generally speaking, those cases held that plaintiffs could be
considered volunteers even though they obtained eligibility for paid
employment with different entities as a result of their volunteer work.  As
the Todaro II court noted, the situation was analogous to a "judicial
intern's hope that her internship will lead to a profitable legal job . . .
."  Id. at 231.  Unlike those cases, however, Plaintiffs claim that AOL
induced them to contribute more hours by suggesting it would enhance their
prospects of obtaining paid employment.  As noted supra, such practices,
depending on the facts and circumstances, could undermine the policy of the
FLSA.  Moreover, the workers at issue in those cases volunteered for public
agencies.  Congress explicitly recognized that volunteers for public agencies
may be excluded from FLSA coverage.  See 29 U.S.C. § 203(e)(4)(A).

[9] I also find this analysis to be relevant to the other considerations
suggested by each party, cast in their own terms, which relate to who
benefited from the work performed by Plaintiffs, discussed in further detail
in Sections D and E, infra.

among employers, but also among workers looking for jobs." <u>Id.</u>

As one House Report analyzing the FLSA noted:

> The wages and hours prescribed apply nationally in each particular industry. There are to be no differentials either between sections of the United States, between industries, or between employers. No employer in any part of the United States in any industry affecting interstate commerce need fear that he will be required by law to observe wages and hour standards higher than those applicable to his competitors. No employee in any part of the United States in any industry affecting interstate commerce need fear that the fair labor standards maintained by his employer will be jeopardized by oppressive labor standards maintained by those with whom his employer competes.

H. Rep. No. 2182, at 6-7 (1938); <u>see also</u> S. Rep. No. 640 (1949). It follows that if AOL did not have to pay for an integral component of its workforce, it may have reaped an unfair competitive advantage to its benefit, irrespective of the benefits to Plaintiffs. <u>Cf. Danneskjold v. Hausrath</u>, 82 F.3d 37, 44 (2d Cir. 1996) ("Where a prisoner's work for a private employer in the local or national economy would tend to undermine the FLSA wage scale . . . the FLSA applies."); <u>Watson v. Graves</u>, 909 F.2d 1549 (5th Cir. 1990).

I also believe the community leader's integration is relevant under the plain meaning of the term "employee." As the <u>Todaro I</u> court noted:

> When someone's services are essential to the operation of a business, that person is more often an employee of the business than a volunteer. A volunteer, on the other hand, usually fills an adjunct or supplementary role in the operation of the business. Although the services provided by volunteers is of high value, an employee is more likely to be indispensable to a business than a volunteer is. A volunteer, after all, serves at his or her own whim. If a particular volunteer were vital to the operation of a business, the business would be likely to attempt to ensure the continued performance of the volunteer by forming a more permanent (and compensatory) bond between them.

27 F. Supp. 2d at 536; see also Krause v. Cherry Hill Fire District 13, 969 F. Supp. 270, 275 (D.N.J. 1997) (noting that part-time "volunteer" firefighters were an integral part of the force, supporting a finding of employment); cf. Archie v. Grand Cent. P'shp, Inc., 997 F. Supp. 504, 524 (S.D.N.Y. 1998) (finding that plaintiff trainees were employees because "the defendants treated the plaintiffs as classic employees for a classic employer purpose, i.e., to make money.").

In opposing AOL's motion, Plaintiffs have presented evidence that raises issues of fact as to whether AOL's community leaders were in fact integral to AOL's business.[10]

[10] AOL claims that Plaintiffs violated the parties' discovery stipulation by referring to evidence that pertains to volunteers as a whole rather than to just the eleven Plaintiffs. I disagree. Whether Plaintiffs were integral to AOL's business is an important consideration in determining employment status. Accordingly, AOL's internal views regarding the importance and value of its volunteers as a whole certainly are relevant to this inquiry. I stress, however, that my reference to this evidence should not be taken as an implicit finding that this case should be certified as a collective action

Plaintiffs note, for example, that AOL devoted substantial efforts and resources towards its volunteers.  One former employee noted that "millions of dollars was spent hiring employees to manage AOL's communities and train community leaders and otherwise support the activities of the defendants' community leaders and the AOL communities."  (Pls.' Ex. B at 5.) AOL established the Community Leaders Organization ("CLO"), for example, whose "mission statement" was "[t]o enhance the America Online member experience by recruiting, training, supporting and recognizing Community Leaders, who evangelize, build and support America Online communities."  (Pls.' Ex. 19 at AOL-001457; <u>see also</u> Pls.' Ex. 40 at AOL-001467 (stating one the CLO's key objectives is to "[p]romote, expand and maintain partnerships among online volunteers, ACI employees and online communities.").)

Another such presentation notes the CLO's prediction that "'[c]ommunity' will remain the 'Secret Sauce' of AOL" and that "[w]e will have harnessed the volunteer giant, and will fully utilize them to better support members."  (Pls.' Ex. 9 at AOL-000490.)  AOL also created a wholly-owned subsidiary, AOL Communities, Inc. ("ACI"), whose "[p]rimary responsibility [was] for day to day management of the volunteers, based on channel, or forum specific goals and objectives."  (Pls.' Ex. 2 at AOL-

under section 206(b) of the FLSA.  I expect that this issue will be briefed at a subsequent stage of this case.

21

000219.)  AOL provided ACI with a budget of over four million
dollars.  AOL's efforts in this regard suggest that it viewed
its volunteers as valuable resources that were incorporated into
its day-to-day business.

Plaintiffs also urge that their services were integral to
AOL because their duties were the same (or substantially
similar) to those performed by paid employees.[11]  Plaintiffs cite
a February 24, 1998 memorandum, for example, that recommended
"[e]limination of the (18) eighteen paid ACI Room Manager
positions (this position would become a volunteer position)."
(Pls.' Mem. Ex. 64.)  One Plaintiff, who held both paid and
"volunteer" positions with AOL, testified that she performed the
same duties as an unpaid "volunteer" and as a paid employee.
(See Pls.' Ex. G at 2 ("When I was paid employee of the
defendants my work responsibilities included many of the same
tasks I performed as an unpaid 'volunteer.'").)  Another
Plaintiff noted that she would open enhanced chat rooms as a
volunteer, a function that was also performed by paid employees
in the AOL area where she worked.  (See Pls.' Ex. E at 2; see
also Pls.' Ex. J ¶ 2 ("I performed many of the same tasks that

---

[11] AOL concedes the relevance of this inquiry, as one purpose of the FLSA is
to prevent a volunteer from "displac[ing] a bona fide applicant who desired
to sell his services at prevailing rates." Isaacson, 450 F.2d at 1310; see
also Benshoff, 180 F.3d at 140.

had previously been performed by paid employees of the
defendants or their online partners.").)

One former AOL employee stated that "[t]here simply were
not enough paid employees to keep these communities running and
active." (Pls.' Ex. B at 4.) Other Plaintiffs noted that if
they, or other volunteers, were unable to make their pre-set
"shifts," then paid employees would take over their duties for
those particular shifts. (See Pls.' Ex. F at 2 ("If no unpaid
'volunteer' workers were available to cover certain times . . .
defendants' paid employee and my supervisor[] would cover those
times.").) Indeed, others referenced AOL's "policy of
encouraging their paid employees to turn work over to
'volunteers.'" (Pls.' Ex. G at 4.)

Plaintiffs testified that AOL closely managed their day-to-
day work, much as an employer would do with an employee.
Plaintiffs claim, for example, that they underwent training
before becoming community leaders, which, in certain instances,
was quite time-consuming. Plaintiffs also testified that they
had to adhere to pre-set schedules. In addition, they could be
"fired" from their positions for violating certain conditions of
AOL's volunteer program. (See, e.g., Pls.' Ex. 34 at AOL-
000203; AOL-000206 (setting forth "guidelines" for certain
community leaders, including grounds for release and thirty day

vacation per year policy).)[12] Moreover, Plaintiffs testified
that approximately one-third of their work was of an
administrative nature, such as writing reports of chat sessions
to their superiors.

Viewing this evidence in the light most favorable to
Plaintiffs, there is a genuine issue of material fact regarding
the precise role that Plaintiffs played in AOL's business.
Whether Plaintiffs should be deemed "integral" to this business
must be resolved at a subsequent date, after further factual
development.

D.    Benefit to AOL

I also must consider whether AOL derived a direct economic
benefit from Plaintiffs' work, and, if so, how that benefit
compares to the rewards received by Plaintiffs.  Numerous courts
have found this issue relevant in determining whether "trainees"
are actually "employees" under the FLSA.  See, e.g., McLaughlin
v. Ensley, 877 F.2d 1207, 1209 (4th Cir. 1989) ("the general
test used to determine if an employee is entitled to the

---

[12] This fact is also relevant to the question of the extent of control exerted
by AOL over the Plaintiffs, a factor considered by some courts.  Control of a
vacation schedule, for example could be indicative of AOL's status as an
employer.  See Johnson v. A.P. Prods., Ltd., 934 F. Supp. 625, 629 (S.D.N.Y.
1996) ("Employer," as defined in the Family Medical Leave Act, "extends to
all those who controlled in whole or in part [plaintiff's] ability to take a
leave of absence and return to her position.") (internal citations omitted),
cited in Astudillo v. US News & World Report, No. 02 Civ. 7902, 2004 U.S.
Dist. LEXIS 18685, at *11-12 (S.D.N.Y. Sept. 17, 2004) (noting that "the
definition of 'employer' in the Family Medical Leave Act tracks the FLSA's
use of that term.") (further citation omitted).  See also Brock, 840 F.2d at
1060.

protections of the Act is whether the employee or the employer
is the primary beneficiary of the trainees' labor."). As those
courts note, employers should not derive direct and substantial
benefits from their trainees' work without having to pay for it.
See, e.g., McLaughlin, 877 F.2d at 1210 (noting all of the
benefits the employer received "without cost to himself");
Chellen v. John Pickle Co., 344 F. Supp. 2d 1278, 1289 (N.D.
Okla. 2004) (finding that trainees were really employees
because, inter alia, "[their] performance of menial tasks and
duties . . . benefited defendants, who would otherwise have had
to pay for those services or use other [of its] employees to
perform them.").

I believe similar considerations are at play here, as AOL
may have reaped a direct and substantial economic benefit
through Plaintiffs' "volunteer" efforts. Moreover, the Supreme
Court has defined "work," for purposes of the FLSA, as "physical
or mental exertion (whether burdensome or not) controlled or
required by the employer and pursued necessarily and primarily
for the benefit of the employer and his business." Tennessee
Coal, Iron & R.R. Co., 321 U.S. at 598 (emphasis added). "If a
defendant gains an immediate advantage from a plaintiff's labor,
courts have held that the plaintiff is an employer [sic] for
purposes of the FLSA." Archie, 997 F. Supp. at 534 (citations
omitted); see also Walling, 330 U.S. at 642 (finding that

railroad trainees were not employees in light of the
"unchallenged findings here that the railroads receive no
'immediate advantage' from any work done by the
trainees . . . ."). With the exception of one affidavit,
Plaintiffs have not attempted to quantify the precise benefit
that AOL reaped through its volunteers.[13]  Plaintiffs have,
however, supplied the Court with evidence suggesting that AOL
viewed its volunteer force as something that was advantageous to
its business.

The head of AOL's CLO, Stuart Wetstein, wrote an April 24,
1997 letter to AOL Community Leaders stating that, "[i]t is this
spirit of voluntarism [sic] and this excitement about the AOL
vision that has enabled AOL to grow from a very small member
base to more than 8 million members while still retaining its
small town feel." (Pls.' Ex. 14 at AOL-001207.) Likewise, in

---

[13] Sean Duggan, a former AOL Executive Director, claimed that AOL's volunteers
were of "critical importance" to the company. (Pls.' Ex. A at 7.) He
reasoned that between thirty and forty percent of AOL's subscribers regularly
used AOL communities that "depended" on volunteers' labor. (Id. at 3.)
Duggan further noted that AOL derived over sixty percent of its revenue from
subscription fees. Id. He believed that if AOL terminated its volunteer
program it could lose a significant number of subscribers, causing "a
substantial negative impact on the company's revenues, earnings, and stock
price." (Id. at 7.) AOL moved to disqualify Duggan as a witness on a
variety of grounds, including his lack of personal knowledge regarding
Plaintiffs, his alleged breach of a non-disclosure agreement, and Plaintiffs'
late designation of him as a witness. I do not believe any of these grounds
justifies disqualifying Duggan at this stage of the case. In addition,
Plaintiffs do not, contrary to AOL's argument, rely on Duggan's affidavit in
contending that AOL derived a direct economic benefit from their efforts.
Instead, Plaintiffs cite a variety of AOL's documents that support their
claim.

an April 8, 1998 memorandum, Wetstein noted that "it would cost millions to replace the hours generated by our volunteers . . . ." (Pls.' Ex. 12 at AOL-001116.)  The same memorandum noted that "[w]e are optimistic about the CLs ongoing role with AOL and believe that when supported correctly, <u>the CLs are a valuable asset to AOL, of which we should be protective</u>." (<u>Id.</u> (emphasis added).)  Another AOL internal document, that appears to have also been generated by Wetstein, listed one of the CLO's goals as: "[c]reate a global communications plan to demonstrate that community, and the Community Leaders who support it, are <u>a competitive differentiator</u>." (Pls.' Ex. 29 at AOL-005474; <u>see also</u> Pls.' Ex. 39 at AOL-001532 (stating in an AOL internal power point presentation that "Key components of success are Community Leaders").)

Indeed, Steve Case, the then Chief Executive Officer of AOL, wrote in an online speech that:

> [T]he fact that we have more CLs than employees says a lot about the importance we place on your work . . . CL's play a central role in facilitating that magical sense of community so [I] can't imagine not having CL's playing an important role 5 years from now! . . . it was getting harder and harder for people especially new members to find what they were looking for[.]  [W]e realized it was not just about 'adding more stuff' but also very importantly about adding context to help people better utilize what was already there . . . we have an engaging mix of content, context and commerce and then wrap throughout it that crucial sense

of community which is where you all come in!
· · · [I] am grateful to everybody who has
contributed to this and will in the future
including, of course, CLs! · · · 5 years
ago, we had 200,000 members · · · [N]ow it
is over 11 million using it 23 hours · · ·
[I] really do recognize the importance of
community[.] [F]rom day one, I have said it
was core to what we do and it certainly
remains core today[.] [A]nd [I] also
recognize what an incredibly important role
you all play in making that dream a reality.
· · [W]e have 9000 employees and over 10,000
CLs but we are completely committed to the
notion of community and therefore to you · ·
· ·"

(Pls.' Ex. 5.)

AOL concedes that community leaders were valuable to

the communities they serviced, and that their efforts

improved the members' experiences.   (See Defs.' Ex. C at

135-36; Ex. E at 31-32; Ex. J at 93.)   While AOL ultimately

disputes the value of the volunteers by pointing out that

they were not necessarily replaced by paid employees (and

therefore, according to AOL, did not displace paid

employees), it is reasonable, at this stage of the case, to

draw the inference that this improved customer experience

provided a direct economic benefit to AOL, by either

drawing more subscribers or by increasing traffic, which in

turn increased access fees and advertising revenue.[14]

---

[14] AOL's proposed test suggests that the displacement of paid employees should
be a factor in determining whether an individual is an employee.  Although
AOL argues that it would not have necessarily replaced community leaders with
employees, such an argument ignores the value that such employees did, in

In addition, some Plaintiffs testified that they were
engaged in functions (as community leaders) that directly
focused on improving AOL's profitability.  For example,
Plaintiff Tijerina ran online fantasy sports leagues, for
which AOL billed its customers at least $100,000 per year.
(See Pls.' Statement of Facts ¶ 44.)  Plaintiff Hallissey
was instructed to encourage AOL subscribers to spend more
time online in order to increase AOL's revenues.  Id.

Viewing the evidence in the light most favorable to
Plaintiffs, and drawing all reasonable inferences in their
favor, I believe genuine issues of material fact exist regarding
the benefits that AOL derived from Plaintiffs' efforts.  A more
developed record is necessary to resolve this issue,
particularly in light of the difficult and novel questions of
law this case presents.  Cf. Miller v. General Outdoor
Advertising Co., Inc., 337 F.2d 944, 948 (2d Cir. 1964) (noting
the appropriateness of denying summary judgment "particularly
where so many complicated issues of fact must be resolved in
order to deal adequately with difficult questions of law which
remain in the case.").  This result is also warranted in light
of the policy of narrowly construing exemptions to the FLSA.

---

fact, contribute to AOL.  Additionally, AOL's position is also undermined by
at least one AOL memorandum suggesting that paid employees could be replaced
by community leaders.  (See Pls.' Ex. 64.)

E.    Benefits to Plaintiffs

Several of the factors in AOL's proposed test for establishing whether a worker was an "employee" focus on whether the work was performed for the benefit of the employee and whether the plaintiff derives a "substantial advantage" from the work performed.  While I do not adopt the test proposed by AOL, I do note that courts have taken similar factors into account in determining whether, under the totality of the circumstances, a person qualified as an employee or a volunteer.

In Roman v. Maietta Constr., 147 F.3d 71 (1st Cir. 1998), the plaintiff, Roman, was a friend of the son of the owner of a construction company.  Roman volunteered as crew chief for the son's stock car racing team, which was sponsored by the construction company. Roman subsequently secured a job as a construction welder with the company and continued to serve as the son's crew chief.  Despite the fact that some of Roman's supervisors permitted Roman to work on the car during company time, the court found that Roman's activities were not integral to the construction company's business and that plaintiff had performed the services "for his personal enjoyment rather than for the benefit of Maietta."  Id. at 75.

While Plaintiffs may have also enjoyed their participation in some of their activities for AOL, not all of the work performed was of such a nature.  For example, administrative

work, such as writing reports to AOL supervisors, was not the type of work a reasonable fact finder would necessarily find to have been performed for the Plaintiffs' benefit. Moreover, with respect to the activities that Plaintiffs may have enjoyed, the FLSA does not require that an employee cannot enjoy any part of their job to be entitled to compensation. Unlike <u>Maietta</u>, AOL directed Plaintiffs to conduct activities that they had not performed voluntarily prior to AOL's direction of their activities and the work was more of a direct benefit to AOL than the indirect benefit conferred on the employer in the <u>Maietta</u> case. Accordingly, I do not find that any "benefits" reaped by Plaintiffs by virtue of their interest or enjoyment in some of their duties preclude recovery under the FLSA.

## V.    <u>CONCLUSION</u>

For the reasons set forth above, AOL's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Summary Adjudication that Plaintiffs are Not "Employees" is DENIED. Accordingly, AOL's motion to dismiss Plaintiffs' remaining state law claims on supplemental jurisdictional grounds is DENIED as moot.

The parties are directed to appear in my Court for a status conference at 11:00 A.M. on April 19th.

SO ORDERED.

Dated:  New York, N.Y.
        March 10th, 2006

KEVIN THOMAS DUFFY
UNITED STATES DISTRICT JUDGE

EXHIBIT "C"

*MARRERO, J.*

LEON GREENBERG, P.C.
5 Beekman Street – Suite 212
New York, New York  10038
(212) 227-4841
Leon Greenberg (LG-3280)

*Attorney for Plaintiffs*

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
590 Madison Avenue, 19th Floor
New York, New York  10022
(212) 872-1022
James P. Chou (JC-2629)

1333 New Hampshire Avenue, N.W., Suite 400
Washington, D.C.  20036
(202) 887-4162
Randall L. Sarosdy
Shari L. Fleishman
Thais Richardson Rencher

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KELLY HALLISSEY, et al., | ) ) ) ) ) |
|     *Plaintiffs,* | ) ) |
| v. | ) ) |
| AMERICA ONLINE, INC., et al., | ) ) ) |
|     *Defendants.* | ) ) ) ) ) |

99-CIV-3785 (VM) (JCF)

**JOINT STIPULATION TO SET
DISCOVERY PERIOD AND
BRIEFING SCHEDULE ON
THE ISSUE OF THE COURT'S
JURISDICTION OVER THE
SUBJECT MATTER**

The parties hereby stipulate to a six-month discovery period and subsequent briefing

schedule on the issue of the Court's jurisdiction over the subject matter of this action.

Specifically, the parties stipulate to the following discovery and briefing schedule on the issue of whether the plaintiffs are volunteers or employees for purposes of determining whether the Court has subject matter jurisdiction under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.: The cut-off for discovery on the issue of the Court's jurisdiction over the subject matter shall be August 1, 2000; the parties shall file any motions addressing the Court's jurisdiction by September 15, 2000; all briefs responding to such motions shall be filed by October 16, 2000; and any replies shall be filed by November 15, 2000.

The parties further stipulate that Court-ordered notice of the lawsuit will not issue to potential class members prior to the Court's determination of whether it has subject matter jurisdiction of this action. The parties agree, however, that if notice is issued, all persons who join the lawsuit as plaintiffs after such notice has issued will be deemed to have filed consents to joinder as of May 1, 2000. This agreement does not in any way constitute an admission by Defendants that plaintiffs are similarly situated with any other persons, including persons who are not a party to this action, or that any other persons may join in this lawsuit pursuant to 29 U.S.C. § 216(b), nor does it constitute a waiver by the Defendants of their right to argue that notice should not be issued on any ground. This agreement does not waive Plaintiffs' right to have others join this lawsuit pursuant to 29 U.S.C. § 216(b) even if no Court-ordered notice is issued.

This Joint Stipulation shall supersede all prior stipulations and orders relating to discovery and briefing schedules in this litigation.

2

Respectfully submitted,

LEON GREENBERG, P.C.

Dated: New York, New York
     February **8**, 2000

By: _____

Leon Greenberg (LG-3280)
5 Beekman Street – Suite 212
New York, New York  10038
(212) 227-4841

*Attorney for Plaintiffs*

AKIN, GUMP, STRAUSS, HAUER
& FELD, L.L.P.

Dated: Washington, D.C.
     February **8**, 2000

By: ___Randall L. Sarosdy_____

Randall L. Sarosdy
Shari L. Fleishman
Thais Richardson Rencher
1333 New Hampshire Avenue, N.W.
Suite 400
Washington, DC  20036
(202) 887-4000

James P. Chou (JC-2629)
590 Madison Ave., 19th Floor
New York, New York  10022
(212) 872-1022

*Attorneys for Defendants America Online,
Inc. and AOL Community, Inc.*

SO ORDERED: 27 March 2000

_____

Victor Marrero
United States District Judge

3

Entered this _____ day of February, 2000

EXHIBIT "D"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
Kelly Hallissey, et al.,              :
                                      :
                    Plaintiffs,       :
                                      :
         -against-                    :      99-CIV-3785 (KTD)
                                      :      MEMORANDUM AND ORDER
America Online, Inc., et al.,         :
                                      :
                    Defendants.       :
----------------------------------X

KEVIN THOMAS DUFFY, U.S.D.J.:

A) Background

     The plaintiffs ("Plaintiffs") allege that they were

employees of Defendants America Online, Inc. and America Online

Communities, Inc. (collectively "AOL") and claim that AOL's

failure to pay them wages during their term of employment as

participants in AOL's community leader ("CL") program

contravened the Fair Labor Standards Act ("FLSA") and the New

York State Minimum Wage Act.  Plaintiffs further contend that

AOL owes them unpaid minimum wages and overtime wages.  AOL

contends that the CLs were not employees, but rather mere

volunteers and therefore not entitled to any compensation.

     Plaintiffs have moved this court pursuant to 29 U.S.C. §

216(b) ("Section 216(b)") to certify the class and issue a Notice

of Pendency to every person who provided labor to AOL as a CL

(the "former CLs"), so that such persons may opt in to the FLSA

1

lawsuit.[1]  It is estimated that there are about 13,000 former

CLs.  AOL opposes the motion, arguing that class treatment is

improper here where the former CLs are not similarly situated to

the named Plaintiffs because each CL's experience was unique and

would require an individualized inquiry.  Specifically, AOL

argues that the CLs varied widely regarding their expectations

of compensation, whether they were integral to AOL's business,

whether they benefited AOL, and whether they personally

benefited from their participation in the program.  AOL has also

objected to the scope and form of Plaintiffs' proposed notice.

B) Legal Standard

The FLSA allows employees to sue on behalf of themselves

and other employees who are "similarly situated."  29 U.S.C. §

216(b).  Similarly situated employees may opt in to the lawsuit

and become party plaintiffs by filing written consent with the

court.  Krueger v. New York Telephone Co., 1993 WL 276058 at *2

(S.D.N.Y. July 21, 1993).  Plaintiffs can meet this burden by

making "a modest factual showing sufficient to demonstrate that

they and potential plaintiffs together were victims of a common

policy or plan that violated the law."  Hoffmann v. Sbarro,

Inc., 982 F.Supp. 249, 261 (S.D.N.Y. 1997).  Plaintiffs may

satisfy this requirement by relying on their own pleadings,

---

[1] While a Rule 23 class certification would bind all persons with the same
claims made by the named plaintiffs unless they opt out of the lawsuit, a
FLSA collective action prohibits anyone from joining the lawsuit as a
plaintiff unless they opt in by filing a written consent with the court.

2

affidavits, declarations, or the affidavits and declarations of
other potential class members. Anglada v. Linens 'N Things,
Inc., 2007 WL 1552511 at *4 (S.D.N.Y. April 26, 2007).

Although several depositions have been taken and numerous
documents produced, it is not necessary to engage in the second
tier of analysis with the more stringent standard here as such
scrutiny is applied "only to 'post discovery' determinations,
'usually precipitated by a defendant's motion for
decertification of the class,' and not by a § 216(b) motion."
Chowdhury v. Duane Reade, Inc., 2007 WL 2873929 at *3 (S.D.N.Y.
Oct. 2, 2007) (citing Torres v. Gristede's Operating Corp., 2006
WL 2819730 at *7 (S.D.N.Y. Sept. 29, 2006) (emphasis in
original)). If the court finds that the plaintiffs are
similarly situated, it may conditionally certify the class and
authorize notice to be sent to the putative class members.
Trinidad v. Breakaway Courier Sys., Inc., 2007 WL 103073 at *3
(S.D.N.Y. Jan. 12, 2007). Plaintiffs have met their burden.
C) Appropriateness of the Notice

AOL contends that the numerous differences amongst the CLs
preclude finding that the Plaintiffs are similarly situated to
the former CLs. AOL argues that because the CLs volunteered for
different reasons, had different expectations regarding
compensation and employment, performed different functions with
different powers, and contributed and benefited differently,

3

class treatment is improper as individual issues predominate over the class issues. However, as one court noted, the "similarly situated" requirement of Section 216(b) is considerably less stringent than the requirement of Rule 23 of the Federal Rules of Civil Procedure that common questions "predominate." Heagney v. European Am. Bank, 122 F.R.D. 125, 127 n.2 (E.D.N.Y 1988). Plaintiffs need not show that they and the former CLs are identically situated. Mazur v. Olek Lejbzon & Co., 2005 WL 3240472 at *5 (S.D.N.Y. Nov. 30, 2005); Schwed v. General Elec. Co., 159 F.R.D. 373, 375 (N.D.N.Y. 1995). While dates of employment and hours worked are unique to each employee, it does not necessarily create dissimilarity under the FLSA. Mentor v. Imperial Parking Sys., Inc., 246 F.R.D. 178, 181 (S.D.N.Y. 2007). Nor does the fact that employees worked a variety of different jobs in a number of different departments at different locations preclude class treatment. Heagney, 122 F.R.D. at 127. Moreover, plaintiffs' subjective beliefs as to their status under the FLSA are irrelevant to whether a class should be conditionally certified. Reab v. Electronic Arts, Inc., 214 F.R.D. 623, 629 (D. Colo. 2002) (ordering notice to similarly situated persons who volunteered as customer service providers in an online game's "counseling program").

"The proper inquiry in a § 216(b) determination is whether plaintiffs are similarly situated *with respect to their*

*allegations that the law has been violated."* Chowdhury, 2007 WL
2873929 at *5 (emphasis in original) (citation omitted).  In
Chowdhury, the court held that the wide variance in the
abilities, competence, durations of employment, and specific
tasks of the named plaintiffs and opt in plaintiffs did not
preclude finding them similarly situated as to their allegation
of a FLSA violation.  Id.  Likewise, although there may be
circumstances unique to each CL in this case, the fundamental
allegation found in Plaintiffs' declarations and pleadings that
CLs were denied minimum and overtime wages because of their
classification by AOL as "volunteers" in the CL program is
common to all of the CLs.  See Heagney, 122 F.R.D. at 127
(finding class treatment proper although each plaintiff
participated in a "supposedly voluntary" program because of
unique incentives and coercions).  Therefore, I find that
Plaintiffs and former CLs are similarly situated.

Even if all the plaintiffs turn out to be dissimilarly
situated, notification is appropriate at this stage.  Schwed,
159 F.R.D. at 375.  "At the very least, plaintiffs' detailed
allegations and supporting affidavits successfully engage
defendants' affidavits to the contrary for purposes of the
present motion."  Krueger, 1993 WL 276058 at *2.  I therefore
conditionally certify the collective action and grant

5

Plaintiff's motion to issue notice of pendency to give former

CLs an opportunity to opt in to the lawsuit.

D) Form and Scope of the Notice

   Plaintiffs have requested permission to issue notice over a

120 day period to the former CLs.  Plaintiffs have also

requested that the court order AOL to provide the last known

mailing and electronic mailing ("E-mail") addresses of the

former CLs so that Plaintiffs can issue notice through both

channels, which they claim would be consistent with the broad

remedial purposes of the FLSA.  They also seek an order

requiring AOL to make its E-mailing system available to

Plaintiffs so that they can send the E-mail notices in a way

that notifies the recipients that the messages are not "spam" or

"junk."  Finally, they request that this court permit the former

CLs to consent by E-mail or fax ("electronic consents") as a

supplemental alternative to returning hand-signed consents.

   AOL concedes that E-mail is an appropriate method because

of its promptness, accuracy, and the fact that the former CLs

would be familiar with using E-mail.  However, AOL makes several

objections.  First, AOL seeks to limit the scope of the

recipients to former CLs only, instead of the broad class

described in Plaintiffs' proposed notice.  This court finds that

the class description in Plaintiffs' proposed notice must be

revised to limit the "unpaid 'volunteers'" to those who

6

participated in AOL's "Community Leader" program.  In all other respects, the class definition is sufficient.

Second, AOL objects to notices also being sent to the former CLs' mailing addresses as it would be duplicative and wasteful.  AOL further claims that any notice should originate from AOL to avoid improper solicitation by Plaintiffs' counsel.  Accordingly, AOL requests that the notice not include any contact information of Plaintiffs' counsel.  In selecting the manner of issuing the notice, this court must strike the appropriate balance in ensuring notification to the former CLs while minimizing disturbance to AOL's business.  See Sherrill v. Sutherland Global Servs. Inc., 487 F.Supp. 2d 344, 351 (W.D.N.Y. 2007) (allowing notice to be posted at defendant's places of business for 90 days and mailed to all class members, but denying request to also E-mail the notice to all class members and publish the notice in the company newsletter).  As this case has been pending for some time, immediacy of notice is of paramount concern to minimize inability to contact former CLs.  As such, this court orders AOL to E-mail the notice to every person who participated in the CL program from May 1, 1997 up to and including May 1, 2000.[2]  The E-mail shall conspicuously alert

---

[2] These dates reflect the parties' joint stipulation of March 27, 2000, whereby they agreed to toll the statute of limitations such that former CLs who join the lawsuit will be deemed to have filed consents as of May 1, 2000.

the recipients in the subject line of the transmission that it
is legal notice and not junk or spam.

This court also finds that mailed notice to the last known
address of each former CL is appropriate.  It would not be
improper solicitation for mailed notice to originate from
Plaintiffs' counsel or for it to contain contact information in
the event that former CLs have questions regarding the lawsuit.
See Mentor, 246 F.R.D. at 182 (approving form that included
contact information of plaintiff's counsel); Chowdhury, 2007 WL
2873929 at *6 (ordering defendants to provide plaintiffs the
contact information of potential plaintiffs).  This court
therefore approves the inclusion of Plaintiffs' counsel's
contact information in the notice and orders AOL to provide
Plaintiffs' counsel with the last known mailing address of each
former CL.  Thereafter, Plaintiffs' counsel shall mail the
notice to each former CL by first class mail.

Third, AOL objects to the electronic consents, claiming
that returning hand-signed consents is not overly burdensome.
AOL further requests that any responses from the former CLs,
whether by mail or electronically, be directed to the court
rather than to Plaintiffs' counsel.  This court finds that hand-
signed consents may be submitted by mail or facsimile, but not
by E-mail.  Whether by mail or facsimile, the consent must bear
the former CL's signature.  Also, both notices must instruct the

8

former CLs to submit any written consents to the Clerk of the
Court only.  This is to prevent discouraging the former CLs from
seeking outside counsel.  See Guzman v. VLM, Inc., 2007 WL
2994278 at *9 (E.D.N.Y. Oct. 11, 2007).

Fourth, AOL contends that the 120-day period is too long
and that the court should limit any notice to thirty days, as
most courts have done.  Plaintiffs argue that 120 days is
necessary as many former CLs may have changed addresses since
the conception of this lawsuit and such time is necessary in the
event of notices being returned as undeliverable or forwarded to
new addresses.  However, in requesting notice to be sent to the
E-mail addresses of the former CLs, Plaintiffs argued that
unlike mailing addresses, E-mail addresses do not often change
and would be an accurate way of contacting the former CLs.  As
E-mail notice would alleviate many of the concerns of being
unable to contact former CLs by mail, this court finds the 120-
day period excessive and limits the period for which former CLs
may respond to 60 days.  Such a time period is proper
considering the large number of former CLs who are to be
notified, but is short enough to prevent undue delay or any
prejudice to AOL.

Fifth, AOL claims that the notice should not include
statements regarding anti-retaliation laws as it improperly
assumes the CLs were employees.  AOL has the ability to cancel

9

subscriptions to its service whether the former CLs are/were
employees or not, but the former CLs "are entitled to know that
it is a violation of the FLSA for [AOL] to retaliate against
them for exercising their right to opt in to the litigation."
Reab, 214 F.R.D. at 630.  The anti-retaliation clause may
therefore be included.

Sixth, AOL claims that any notice should include the
obligations that may be imposed upon the former CLs who join the
lawsuit.  Such information is appropriate.  The notice shall
notify the former CLs, in appropriate language, that if they opt
in, they may be asked to (1) appear for depositions; (2) respond
to written discovery; (3) testify at trial; and (4) pay costs if
they do not prevail.

Finally, AOL argues that Plaintiffs should bear the costs
of issuing the notice.  Costs shall be borne by Plaintiffs as
they are incurred in the course of sending these notices.  If
desired, the prevailing party may seek to recover such costs at
the end of litigation.  McGinty v. New York, 251 F.3d 84, 100
(2d Cir. 2001).

E) Conclusion

Plaintiff's Section 216(b) motion is hereby GRANTED.  The
class is conditionally certified.  AOL shall, within thirty days
of the date of this order, provide Plaintiffs' counsel with the
name and last known mailing address of each unpaid person who

10

participated in AOL's Community Leader program from May 1, 1997
up to and including May 1, 2000.  Plaintiffs' counsel shall mail
the notice of pendency by first class mail to these addresses
within thirty days of receiving the names and addresses from
AOL.  Meanwhile, AOL shall issue the notice to the former CLs by
E-mail no later than the thirtieth day following the date on
which it provides the information to Plaintiffs' counsel.  Any
written consents shall be submitted to the court only and must
arrive on or before the sixtieth day following the date by which
both notices must have been sent.  Except as stated above,
Plaintiffs' proposed forms of notice are approved.  Where
required, the forms shall be revised to conform to the court's
rulings above.

SO ORDERED.

Dated:  New York, N.Y.
February  19 , 2008

KEVIN THOMAS DUFFY
UNITED STATES DISTRICT JUDGE