EXHIBIT "E"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X Docket #:

KELLY HALLISSEY and BRIAN A. WILLIAMS,
Individually and on behalf of others
similarly situated,

               Plaintiffs,

     -against-

**99 CIV. 3 7 85**

AMERICA ONLINE, INC. and AMERICA
ONLINE COMMUNITIES, INC.

                        COMPLAINT

                 Defendants.

------------------------------------X

     The Plaintiffs, by their attorney, Leon Greenberg P.C.,
as and for a Complaint against the defendants, state and allege,
as follows:

     JURISDICTION, PARTIES AND PRELIMINARY STATEMENT

    1.    This Court has jurisdiction over the claims
presented on the First Cause Of Action herein pursuant to the Act
of June 25, 1938, ch 676, 52 Stat 1069, 29 USC Sections 201-219,
known as the Fair Labor Standards Act ("the FLSA" or "the Act"),
a law of the United States regulating interstate commerce, and
specifically under the provisions of Section 16 of said act, as
amended (29 U.S.C. § 216(b)).

    2.    This Court has jurisdiction over the New York State Law
claims presented in the Second Cause of Action pursuant to 28
U.S.C. § 1367(a).

    3.   The plaintiff Kelly Hallissey, is a resident of the
State of New York.

4.    The plaintiff Brian A. Williams is a resident of the State of Texas.

5.    The defendant, America Online, Inc. ("AOL"), is a corporate entity duly formed and incorporated pursuant to the laws of the State of Delaware.

6.    The defendant, America Online, Inc., has a business presence in New York State and/or otherwise conducts business and/or provides services in New York State and is subject to the personal jurisdiction of this Court and the Courts of the State of New York.

7.    The defendant, America Online Communities, Inc. ("AOLC"), is a corporate entity duly formed and incorporated pursuant to the laws of the State of Delaware.

8.    The defendant, America Online Communities, Inc., is a corporate entity duly formed and incorporated pursuant to the laws of a State or jurisdiction other than the State of Delaware.

9.    The defendant, America Online Communities, Inc., is a wholly owned subsidiary of defendant AOL.

10.    The defendant, America Online Communities, Inc., has a business presence in New York State and/or otherwise conducts business and/or provides services in New York State and is subject to the personal jurisdiction of this Court and the Courts of the State of New York.

11.    The plaintiffs Brian A. Williams and Kelly Hallissey

2

(the "individual plaintiffs") bring the First Cause of action herein on behalf of themselves, personally, under the FLSA and on behalf of all other persons similarly situated who are current or former employees of defendants who agree in writing to join the First Cause of Action seeking recovery under the FLSA (the "FLSA class plaintiffs").

12.    The plaintiff Kelly Hallissey brings the Second Cause of action herein on behalf of herself, individually, and all persons similarly situated (the "New York Labor Law Class plaintiffs"), as a class action pursuant to Federal Rules of Civil Procedure Rule 23, in respect to all claims that the plaintiff Hallissey and all persons similarly situated have against defendants as a result of the defendants' violations of Article 19 of the Labor Law of the State of New York and the wage orders contained at 12 NYCRR 137 to 142.

## STATEMENT OF FACTS

13.    The defendant, AOL is a for profit business which has gross revenue in excess of $500,000 per annum and is engaged in the production of goods for interstate commerce and/or uses and handles goods which have moved in interstate commerce as such terms are defined in the FLSA and is an employer subject to the jurisdiction of the FLSA

14.    The defendant, AOLC is a for profit business which has gross revenue in excess of $500,000 per annum and is engaged in

the production of goods for interstate commerce and/or uses and handles goods which have moved in interstate commerce as such terms are defined in the FLSA and is an employer subject to the jurisdiction of the FLSA.

15. America Online Communities, Inc. is and has always been a wholly owned subsidiary of defendant AOL.

16. The defendant AOL maintains and provides to members of the general public, in return for the payment of a subscription fee or usage charge, a certain computer service known as "America Online" or "AOL."

17. The defendant AOL maintains and provides to members of the general public, in return for the payment of a subscription fee or usage charge, a certain computer service known as "America Online" or "AOL" which service is usually accessed via telephone lines and is accessible throughout the United States and currently has in excess of ten million subscribers.

18. The defendant AOL maintains and provides to members of the general public, in return for the payment of a subscription fee or usage charge, a certain computer service known as "America Online" or "AOL" which service is usually accessed via telephone lines and is accessible throughout the United States and currently has in excess of ten million subscribers, and further, that such service is provided as a for-profit business venture with the defendant AOL either earning profits from providing such

4

services and/or charging such subscription or usage charges or
intending to make a profit from such activities.

19.   As part of the defendant AOL's for profit business
activities in connection with providing its AOL service the
defendant provides various "content" to its customers, such
"content" including various services which are provided to AOL's
customers and also including, but not limited to, various AOL
sites which its customers can access for the purposes of sharing
and/or receiving information and/or for entertainment purposes
and/or for educational purposes and/or for social purposes and/or
numerous other purposes and uses which AOL's customers make of
the service provided by defendant AOL.

20.   That the various "content" which defendant AOL provided
to its customers was, and is, critical to the defendant AOL's
business success, and many of its customers, and much of the
defendant AOL's profits, come about as a direct result of the
defendant AOL's creation, maintenance, and operation of such
"content" as part of its AOL service.

21.   That in connection with maintaining, providing,
servicing, and continuing such "content" as a part of its AOL
service, which was critical to the defendant AOL's profits and
survival, the defendant AOL had various persons, including the
individual plaintiffs, the FLSA class plaintiffs, and the New
York Labor Law class plaintiffs, through different programs and

5

relationships that the defendant AOL consented to, encouraged, regulated, defined, and/or otherwise consciously participated in, provide labor and services to maintain, service, create, and provide "content" for the defendants AOL's service which labor and services AOL claims were provided by such persons as volunteers.

22.   That as part of defendant AOL's programs and/or relationships alleged in paragraph 21, which programs and/or relationships bestowed what is commonly called "community leader" status on the individual plaintiffs, the FLSA class plaintiffs, and the New York Labor Law class plaintiffs, although these programs and relationships also went by other names, defendant AOL used its wholly owned subsidiary AOLC to actually represent AOL and/or otherwise act on AOL's behalf in respect to such programs and/or relationships.

23.   That while the relationships and programs alleged in paragraph 21 where nominally between the individual plaintiffs, the FLSA class plaintiffs, and the New York Labor Law class plaintiffs, and AOLC, these relationships and programs benefitted AOL and were formed by AOL for the specific purpose of benefitting AOL as alleged herein.

24.   That the individual plaintiffs, the FLSA class plaintiffs, and the New York Labor Law class plaintiffs, as part of their participation in the relationships and programs alleged

6

in paragraph 21, were required to follow certain rules and regulations promulgated by the defendants as a condition of their continued participation in such relationships and programs, such rules and regulations including, but not limited to, requirements that they provide a certain minimum number of hours of labor on a weekly or other basis; that they continue to provide such labor on an uninterrupted basis or forfeit their continued participation in such programs and relationships unless they had a documented medical disability which temporarily prevented them from providing such labor on an uninterrupted basis; and in otherwise being required to follow such rules and regulations which the defendants enforced.

25.    That the defendants reserved the right to terminate the individual plaintiffs, the FLSA class plaintiffs, and the New York Labor Law class plaintiffs, at anytime and for any reason from the relationships and programs alleged in paragraph 21, which right the defendants frequently chose to exercise.

26.    That the defendants provided the individual plaintiffs, the FLSA class plaintiffs, and the New York Labor Law class plaintiffs, with the tools and means to perform the labor which was required of them as part of their participation in the relationships and programs alleged in paragraph 21, including, but not limited to, discounted or free access to the AOL service and other resources, such as computer memory and online server

7

space, which was required to provide the "content" which such persons created, maintained, modified or otherwise provided labor for.

27. That the defendants actively supervised and controlled the individual plaintiffs, the FLSA class plaintiffs, and the New York Labor Law class plaintiffs, in respect to the labor such persons were required to perform as part of their participation in the relationships and programs alleged in paragraph 21, and that the defendants to the extent that they did not actively supervise and control such labor reserved the right to do so.

28. That the individual plaintiffs, the FLSA class plaintiffs, and the New York Labor Law class plaintiffs did not provide services or labor of the kind alleged herein to any other persons or entities nor were they in the business of providing such labor and services.

29. The individual plaintiffs, the FLSA class plaintiffs, and the New York Labor Law class plaintiffs received no compensation from the defendants for the work, labor and services they provided to the defendants pursuant to the relationships and programs alleged in paragraph 21.

30. That the relationships and programs alleged in paragraph 21, while being denominated as "volunteer" programs by the defendants, created, within the meaning of the statutes alleged herein, an employer and employee relationship which

8

obligated the defendants to pay to the individual plaintiffs, the FLSA class plaintiffs, and the New York Labor Law class plaintiffs, minimum wages pursuant to the respective New York State and Federal Laws, the term minimum wages as used herein also including the requirement for the payment of time and one-half pay, or overtime pay, for work in excess of 40 hours a week as required by 29 U.S.C. § 207 and 12 NYCRR 142 et. seq.

31.     That the defendant AOL, being fully aware of its potential liability for minimum wages under New York State and Federal Law in respect the relationships and programs alleged in paragraph 21 specifically and intentionally used defendant AOLC in its steed as the nominal party to such relationships and programs with the individual plaintiffs, the FLSA class plaintiffs, and the New York Labor Law class plaintiffs, in an attempt to shield AOL from any legal liability for such unpaid minimum wages.

32.     That the defendant AOL was the employer of the individual plaintiffs, the FLSA class plaintiffs, and the New York Labor Law class plaintiffs.

33.     That the defendant AOLC was the employer of the individual plaintiffs, the FLSA class plaintiffs, and the New York Labor Law class plaintiffs.

34.     That the defendants AOL and AOLC jointly were the employers of the individual plaintiffs, the FLSA class

9

plaintiffs, and the New York Labor Law class plaintiffs.

35.     That the defendant AOL, by virtue of its control,
domination and use of AOLC as its agent for the creation and
maintenance of the relationships and programs alleged in
paragraph 21, and the economic benefits it received from such
programs and relationships, has assumed the status of an employer
or joint employer of the plaintiffs within the meaning of the
State and Federal statutes alleged herein.

AS AND FOR A FIRST CAUSE OF ACTION<br>
ON BEHALF OF KELLY HALLISSEY, BRIAN A. WILLIAMS,<br>
AND ALL OTHER PERSONS SIMILARLY SITUATED<br>
PURSUANT TO THE FAIR LABOR STANDARDS ACT

36.     Plaintiffs repeat each and every allegation previously
made herein.

37.     That the defendants failed to pay the individual
plaintiffs any compensation for the work and labor they performed
for the defendants as employees of the defendants.

38.     That the defendants failed to pay numerous other
persons who are similarly situated to the individual plaintiffs
any compensation for the work and labor such others similarly
situated performed for the defendants as employees of the
defendants.

39.     The labor and services performed by the individual
plaintiffs and the persons similarly situated to the individual
plaintiffs were directly essential to the shipment and use of
various goods which moved in interstate commerce and/or such

10

labor and services involved the use of goods which have moved in interstate commerce and all such persons therefor were engaged in commerce or in the production of goods for commerce as those terms are used in the FLSA while employed by the defendants.

40.  That the individual plaintiffs are owed unpaid minimum wages and overtime wages from the defendants pursuant to 29 U.S.C. §§ 206, 207 in an amount which will be determined upon a review of the defendants' records and/or at the trial of this action.

41.  That the number of persons similarly situated to the individual plaintiffs, and the names of such persons, is unknown, but such persons, upon information and belief, number 10,000 or more and such persons, who will be identified once discovery is had in this case upon the review of the defendants' records and upon such identification will file written consents to joinder with this Court pursuant to 29 U.S.C. § 216(b), are owed unpaid minimum wages and overtime wages from the defendants pursuant to 29 U.S.C. §§ 206, 207 in an amount which will be determined upon a review of the defendants' records and/or at the trial of this action.

42.  That the defendants' violations of the FLSA were willful.

43.  That as a result of the foregoing, the individual plaintiffs seek judgment against the defendants on their own

11

behalf and on behalf of those similarly situated who file written consents to joinder in this action for all unpaid minimum wages and overtime wages owed by the defendants to the plaintiffs and such other persons similarly situated pursuant to 29 U.S.C. §§ 206, 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and attorney's fees, as provided for under 29 U.S.C. § 216(b).

AS AND FOR A SECOND CAUSE OF ACTION<br>
ON BEHALF OF KELLY HALLISSEY<br>
AND ALL OTHER PERSONS SIMILARLY SITUATED<br>
PURSUANT TO THE NEW YORK STATE MINIMUM WAGE ACT

44.   Plaintiffs repeat each and every allegation previously made herein.

45.   During at least a portion of the time that the plaintiff, Kelly Hallisey ("Hallisey") was employed by the defendants she performed labor for the defendants in the State of New York.

46.   Pursuant to the New York State Minimum Wage Act (the "NYSMWA"), New York Labor Law Article 19, and the Wage Orders issued thereunder at 12 NYCRR 137-142, Hallisey was entitled to certain hourly minimum wages, overtime wages, and other wages, in respect to work and labor which Hallisey performed within the State of New York, all of which the defendants failed to pay her in violation of such laws.

47.   That there are numerous persons who are similarly

12

situated to the plaintiff Hallissey in respect to her claims under the NYSMWA in that such similarly situated persons, like Hallissey, performed substantial work, labor and services for the defendants for which such persons did not receive the compensation required by the NYSMWA, and upon information and belief the number of such persons exceeds 100.

48.   That the persons similarly situated to plaintiff Hallissey and described in paragraph 47 constitute a class of persons that is so numerous that joinder of all such persons individually is impractical.

49.   There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically whether the defendants have any legal obligation to the class members under the NYSMWA and if so what is the extent of such obligation.

50.   The claims of the plaintiff Hallissey are typical of the claims of the above described class, in that the interests of the plaintiff Hallissey are co-extensive with the interests of the other members of the class, there is a lack of adverse interests between the plaintiff Hallissey and the other members of the class, and common questions exist.

51.   The plaintiff Hallissey will fairly and adequately protect the interests of said class.

13

52.    A class action is superior to other available methods for the fair and efficient adjudication of the class claims under the NYSMWA.

53.    That pursuant to Rule 23 of the Federal Rules of Civil Procedure this Second Cause of Action should proceed as a class action in respect to the unpaid wages owed to the plaintiff Hallissey and the class members under the NYMSWA and the Wage Orders issued thereunder.

54.    The exact amounts owed to Hallissey and the class members is unknown but will be determined and stated after a review of the defendants' records and/or upon the trial of this matter.

55.    Wherefore, plaintiff Hallissey, on behalf of herself and the within described class of other persons similarly situated on this Second Cause of Action, seeks a judgment against the defendants for all wages which should have been paid, but were not paid, to Hallissey and such class members pursuant to the NYSMWA and the Wage Orders issued thereunder, together with

14

an award of attorney's fees, interest and costs as provided under the NYSMWA and New York State Labor Law § 198.

Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
        May 24, 1999

Yours, etc.,

Leon Greenberg (LG3280)
LEON GREENBERG P.C.
ATTORNEYS FOR PLAINTIFFS
5 Beekman Street - Suite 212
New York, New York 10038
(212) 227-4841

15

I, Brian A. Williams , by signing below, hereby consent to join this case as a plaintiff pursuant to 29 U.S.C. 216(b).

_Brian A. Will_
(Plaintiff)

I, *Kellie Hallissey* , by signing below, hereby consent to join this case as a plaintiff pursuant to 29 U.S.C. 216(b).

(Plaintiff)

EXHIBIT "F"

Case 1:99-cv-03785-ATD   Document 2632-3   Filed 05/19/09   Page 21 of 75

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X Docket #: 99 Civ. 3785
KELLY HALLISSEY, BRIAN A. WILLIAMS,            Judge Mukasey
PAUL PRUNIER a minor under the
age of 18 by his parent/guardian
PATRICIA PRUNIER, JOHN ALDRICH,
GAYLE M. STIMLER, LEE B. CONNER II,
AMY B. CONNER, JERRY W. OSBORNE,
ANTHONY E. McLAUGHLIN, THOMAS S.
BRUSKY, REBECKA GALBREATH GOAD,
ARNOLD TIJERINA, JADE M. BEETLE,
and CYNTHIA L. WEIS,
Individually and on behalf of others
similarly situated,

                    Plaintiffs,

           -against-
                                        AMENDED
                                        COMPLAINT
AMERICA ONLINE, INC. and AMERICA
ONLINE COMMUNITIES, INC.

                    Defendants.
---------------------------------------X

       The Plaintiffs, by their attorney, Leon Greenberg P.C. as

and for an Amended Complaint against the defendants, state and

allege, as follows:

           JURISDICTION, PARTIES AND PRELIMINARY STATEMENT

       1.      This Court has jurisdiction over the claims

presented on the First Cause Of Action herein pursuant to the Act

of June 25, 1938, ch 676, 52 Stat 1069, 29 USC Sections 201-219,

known as the Fair Labor Standards Act ("the FLSA" or "the Act"),

a law of the United States regulating interstate commerce, and

specifically under the provisions of Section 16 of said act, as

amended (29 U.S.C. § 216(b)).

2.    This Court has jurisdiction over the New York State Law claims presented in the Second Cause of Action pursuant to 28 U.S.C. § 1367(a).

3.    The plaintiffs Kelly Hallissey and Jade M. Beetle are residents of the State of New York.

4.    The plaintiffs Brian A. Williams and Rebecka Galbreath Goad are residents of the State of Texas.

5.    The plaintiff Thomas S. Brusky is a resident of the State of Wisconsin.

6.    The plaintiff Anthony E. McLaughlin is a resident of the State of West Virginia.

7.    The plaintiff Jerry W. Osborne is a resident of the State of Pennsylvania.

8.    The plaintiffs Lee B. Conner II and Amy B. Conner are residents of the State of Oklahoma.

9.    The plaintiff Gayle M. Stimler is a resident of the State of Minnesota.

10.    The plaintiff John Aldrich is a resident of the State of Kentucky.

11.    The plaintiff Paul Prunier is a resident of the State of Nevada and a minor under the age of 18 who brings this lawsuit by his parent/guardian Patricia Prunier.

12.    The plaintiffs Arnold Tijerina and Cynthia L. Weis are residents of the State of California.

13.    The defendant, America Online, Inc. ("AOL"), is a

2

corporate entity duly formed and incorporated pursuant to the laws of the State of Delaware.

14. The defendant, America Online Communities, Inc. ("AOLC"), is a corporate entity duly formed and incorporated pursuant to the laws of the State of Delaware.

15. The defendant AOLC is a corporate entity duly formed and incorporated pursuant to the laws of a State or jurisdiction other than the State of Delaware.

16. The defendants have a business presence in New York State and/or otherwise conduct business and/or provide services in New York State and are subject to the personal jurisdiction of this Court and the Courts of the State of New York.

17. The plaintiffs Brian A. Williams, Kelly Hallissey, Paul Prunier a minor under the age of 18 by his parent/guardian Patricia Prunier, John Aldrich, Gayle M. Stimler, Lee B. Conner Ii, Amy B. Conner, Jerry W. Osborne, Anthony E. Mclaughlin, Thomas S. Brusky, Rebecka Galbreath Goad, Arnold Tijerina, Cynthia L. Weis, and Jade M. Beetle (the "individual plaintiffs") bring the First Cause of action herein on behalf of themselves, personally, under the FLSA and on behalf of all other persons similarly situated who are current or former employees of defendants who agree in writing to join the First Cause of Action seeking recovery under the FLSA (the "FLSA class plaintiffs").

18. The plaintiffs Kelly Hallissey and Jade M. Beetle bring the Second Cause of action herein on behalf of themselves,

3

individually, and all persons similarly situated (the "New York Labor Law Class plaintiffs"), as a class action pursuant to Federal Rules of Civil Procedure Rule 23, in respect to all claims that the plaintiffs Hallissey and Beetle and all persons similarly situated have against defendants as a result of the defendants' violations of Article 19 of the Labor Law of the State of New York and the wage orders contained at 12 NYCRR 137 to 142.

## STATEMENT OF FACTS

19.   The defendants are for profit businesses each having gross revenue in excess of $500,000 per annum and are engaged in the production of goods for interstate commerce and/or use and handle goods which have moved in interstate commerce as such terms are defined in the FLSA and are employers subject to the jurisdiction of the FLSA.

20.   AOLC is and has always been a wholly owned subsidiary of defendant AOL.

21.   The defendants maintain and provide to members of the general public, in return for the payment of a subscription fee or usage charge, a service known as "America Online" (the "AOL Service") which service is usually accessed via telephone lines and is accessible throughout the United States and currently has in excess of ten million subscribers and the AOL Service is provided as a for-profit business venture with the defendants either earning profits from providing the AOL Service and/or

4

charging such subscription or usage charges which are intended to make a profit from providing the AOL Service.

22.   The AOL Service provided by defendants allows AOL Service subscribers to access various unique Internet sites and services which are restricted to AOL Service subscribers, these unique Internet sites and services include what are commonly called "chat rooms" where AOL Service subscribers can engage in online discussions with other AOL Service subscribers; "forums" where AOL Service subscribers can access and/or share information on particular issues of interest to them; and a myriad of other unique Internet sites and services for entertainment purposes and/or for educational purposes and/or for social purposes and/or numerous other purposes and uses which AOL Service subscribers enjoy in exchange for the payment of their subscription fee.

23.   The various unique Internet sites and services which defendants provide to AOL Service subscribers was, and is, critical to the defendants' business success, and many of its customers, and much of the defendant AOL's revenue and/or profits, come about as a direct result of the defendants' creation, maintenance, and operation of such unique Internet sites and services as part of the AOL Service.

24.   In connection with maintaining, providing, servicing, and continuing such unique Internet sites and services as a part of its AOL Service, which was critical to the defendant AOL's profits and survival, the defendants had the individual

5

plaintiffs, the FLSA class plaintiffs, and the New York Labor Law class plaintiffs (hereafter collectively the "plaintiffs"), through different programs and relationships that the defendants consented to, encouraged and regulated, provide essential labor to maintain, service and create such unique Internet sites and services for the defendants' AOL Service which labor by the plaintiffs consisted of the following amongst other things:

    i) Maintaining and enforcing AOL's "Terms Of Service" ("TOS") which controlled how AOL Service subscribers were allowed to use the AOL Service, which included reporting and/or taking action against persons who violated the TOS by harassing other AOL Service subscribers and/or engaging in other activities which violated the TOS;

    ii) Hosting "chat rooms" where they would moderate the flow of discussion among AOL Service subscriber participants;

    iii) Posting original work at the various unique AOL Internet sites for the enjoyment of the AOL Service subscribers;

    iv) Assisting AOL Service subscribers who had technical problems with using the AOL Service or needed information on the unique AOL Internet sites and services available to AOL Service subscribers;

    v) Training and recruiting other persons to assist in the maintenance of AOL's unique Internet sites and services;

    vi) Providing entertainment services for AOL Service subscribers making use of certain unique AOL Internet sites;

6

vii) Assuring that the quality of the unique AOL Internet sites met certain performance standards set by defendants and correcting deficiencies in such standards;

viii) Assisting in the billing of certain AOL Service subscribers who participated in special AOL Internet services which involved the payment of additional fees beyond the basic AOL subscription fee.

25.   As part of defendants' programs and/or relationships alleged in paragraph 24, which programs and/or relationships bestowed what is commonly called "community leader" or "chatroom host" status on the plaintiffs, although these programs and relationships also went by many other names, defendant AOL used its wholly owned subsidiary AOLC to actually represent AOL and/or otherwise act on AOL's behalf or agent in respect to such programs and/or relationships.

26.   While some of the relationships and programs alleged in paragraph 24 where nominally between the plaintiffs and AOLC, these relationships and programs benefitted AOL and were formed by AOL for the specific purpose of benefitting AOL as alleged herein.

27.   The plaintiffs, as part of their participation in the relationships and programs alleged in paragraph 24, were required to follow certain rules and regulations and abide by certain conditions imposed by the defendants including, but not limited to, requirements that they provide a certain minimum number of

7

hours of labor on a weekly or other basis; that they continue to provide such labor on an uninterrupted basis or forfeit their continued participation in such programs and relationships unless they had a documented medical disability which temporarily prevented them from providing such labor on an uninterrupted basis; that they be closely supervised by other employees of the defendants in the services they performed for the defendants; that they provide regular reports on their activities to their supervisors; that they submit to training and/or course(s) of instruction from the defendants; that they be available to receive, and follow, the detailed instructions of their supervisors who were employees of the defendants; that they make use of facilities and/or resources of the defendants in undertaking the labor required of them; that they, personally, render the services expected of them; that they follow a sequence, order and/or schedule set by the defendants in performing the labor required of them; that they could not earn any profits from the labor they provided and that all ownership rights to any products of their labor were held by the defendants; that they abide by the broad terms of a confidentiality agreement which prohibited them from discussing their labor for the defendants; and in otherwise being required to follow such rules, regulations and conditions which the defendants enforced.

28.    The defendants reserved the right to terminate the

8

plaintiffs at anytime and for any reason from the relationships and programs alleged in paragraph 24, which right the defendants frequently chose to exercise.

29.   The defendants provided the plaintiffs with the tools and means to perform the labor which was required of them as part of their participation in the relationships and programs alleged in paragraph 24, including, but not limited to, discounted or free access to the AOL service and other resources, such as computer memory and online server space, which was required to maintain and/or create the unique AOL Internet sites and services.

30.   The plaintiffs were not in the business of providing the labor and services they furnished to the defendants in connection with the programs alleged in paragraph 24 and did not have the means, tools and/or facilities to provide such labor and services except as employees of the defendants and the plaintiffs were employees of the defendants within the meaning of the FLSA and New York State Law.

31.   The plaintiffs, pursuant to their participation in the relationships and programs alleged in paragraph 24, contemplated and understood they would receive compensation from the defendants for providing labor to the defendants, such compensation being in the form of reduced cost for and/or free access and use of the AOL service, which access and use the plaintiffs were allowed to make for their own personal enjoyment,

9

recreation and purposes and not just as part of their employment by the defendants, and that this compensation, while valuable, was not in compliance with the minimum wage and overtime compensation required to be paid to the plaintiffs by the defendants under the FLSA and/or New York State Law for the labor and services they provided to the defendants.

32.    The plaintiffs, as a result of their participation in the relationships and programs alleged in paragraph 24, contemplated they would receive compensation for providing labor and services to the defendants, and this understanding by the plaintiffs was intentionally fostered by the defendants in a number of ways, including, but not limited to, providing the plaintiffs with free or discounted use of the AOL service; advising the plaintiffs that they would receive preferential consideration for future employment with defendants in jobs which would pay compensation which equaled or exceeded the minimum compensation levels required by the FLSA and/or New York State Law and that such preferential consideration would be granted more extensively if the plaintiffs worked additional hours beyond the minimum number of hours required by the programs and relationships detailed in paragraph 24; advising the plaintiffs that credit hours, meaning hours of free AOL access time which they received as a result of their participation in the programs and relationships detailed in paragraph 24 could be transferred to other persons and used by other persons; and by limiting the

10

disclosure of openings with the defendants for jobs which would pay compensation which equaled or exceeded the minimum compensation levels required by the FLSA and/or New York State Law to persons who participated in the relationships and programs alleged in paragraph 24.

33.    The labor and services performed by the plaintiffs for the defendants was also performed by other persons who were paid employees of the defendants and the plaintiffs were performing the identical functions, duties and responsibilities of numerous other employees of the defendants such other employees of the defendants being paid wages which were in compliance with the minimum wages required by the FLSA and/or New York State Law.

34.    The relationships and programs alleged in paragraph 24, created, within the meaning of the statutes alleged herein, an employer and employee relationship which obligated the defendants to pay to the plaintiffs minimum wages pursuant to New York State and Federal Law, the term minimum wages as used herein also including the requirement for the payment of time and one-half pay, or overtime pay, for work in excess of 40 hours a week as required by 29 U.S.C. § 207 and 12 NYCRR § 142 et. seq.

35.    The defendant AOL, being fully aware of its liability for minimum wages under New York State and Federal Law in respect the relationships and programs alleged in paragraph 24 specifically and intentionally used defendant AOLC in its steed as the nominal party to such relationships and programs with the

11

plaintiffs, in an attempt to shield AOL from any legal liability for such unpaid minimum wages and further that AOLC had no business purpose except to act as AOL's agent in respect to the plaintiffs in connection with the relationships and programs alleged in paragraph 24.

36.    The defendants AOL and AOLC jointly were the employers of the plaintiffs in that they jointly controlled the plaintiffs' work, engaged in joint decision making in respect to the plaintiffs' work, and the work provided by the plaintiffs pursuant to the plaintiffs' agreements with AOLC was solely for the benefit of AOL.

37.    The defendant AOL, by virtue of its control, domination and use of AOLC as its agent for the creation and maintenance of the relationships and programs alleged in paragraph 24, and the economic benefits it received from such programs and relationships, has assumed the status of an employer or joint employer of the plaintiffs within the meaning of the State and Federal statutes alleged herein.

AS AND FOR A FIRST CAUSE OF ACTION
ON BEHALF OF KELLY HALLISSEY, BRIAN A. WILLIAMS,
PAUL PRUNIER a minor under the age of 18 by
his parent/guardian PATRICIA PRUNIER,
JOHN ALDRICH, GAYLE M. STIMLER, LEE B. CONNER II,
AMY B. CONNER, JERRY W. OSBORNE, ANTHONY E. McLAUGHLIN,
THOMAS S. BRUSKY, REBECKA GALBREATH GOAD, ARNOLD TIJERINA,
CYNTHIA L. WEIS AND JADE M. BEETLE AND ALL OTHER PERSONS
SIMILARLY SITUATED PURSUANT TO THE FAIR LABOR STANDARDS ACT

38.    Plaintiffs repeat each and every allegation previously made herein.

12

39.    That the defendants failed to pay the individual plaintiffs the minimum compensation required under the FLSA for the work and labor they performed for the defendants as employees of the defendants.

40.    That the defendants failed to pay numerous other persons who are similarly situated to the individual plaintiffs the minimum compensation required under the FLSA for the work and labor such others similarly situated performed for the defendants as employees of the defendants.

41.    The labor and services performed by the individual plaintiffs and the persons similarly situated to the individual plaintiffs were directly essential to the shipment and use of various goods which moved in interstate commerce and/or such labor and services involved the use of goods which have moved in interstate commerce and all such persons therefor were engaged in commerce or in the production of goods for commerce as those terms are used in the FLSA while employed by the defendants.

42.    That the individual plaintiffs are owed unpaid minimum wages and overtime wages from the defendants pursuant to 29 U.S.C. §§ 206, 207 in an amount which will be determined upon a review of the defendants' records and/or at the trial of this action.

43.    That the number of persons similarly situated to the individual plaintiffs, and the names of such persons, is unknown, but such persons, upon information and belief, number 10,000 or

13

more and such persons, who will be identified once discovery is had in this case upon the review of the defendants' records and upon such identification will file written consents to joinder with this Court pursuant to 29 U.S.C. § 216(b), are owed unpaid minimum wages and overtime wages from the defendants pursuant to 29 U.S.C. §§ 206, 207 in an amount which will be determined upon a review of the defendants' records and/or at the trial of this action.

44.     That the defendants' violations of the FLSA were willful.

45.     That as a result of the foregoing, the individual plaintiffs seek judgment against the defendants on their own behalf and on behalf of those similarly situated who file written consents to joinder in this action for all unpaid minimum wages and overtime wages owed by the defendants to the plaintiffs and such other persons similarly situated pursuant to 29 U.S.C. §§ 206, 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and attorney's fees, as provided for under 29 U.S.C. § 216(b).

AS AND FOR A SECOND CAUSE OF ACTION
ON BEHALF OF KELLY HALLISSEY AND JADE M. BEETLE
AND ALL OTHER PERSONS SIMILARLY SITUATED
PURSUANT TO THE NEW YORK STATE MINIMUM WAGE ACT

46.     Plaintiffs repeat each and every allegation previously made herein.

47.     During at least a portion of the time that the

14

plaintiffs, Kelly Hallissey ("Hallissey") and Jade M. Beetle ("Beetle") were employed by the defendants they performed labor for the defendants in the State of New York.

48.     Pursuant to the New York State Minimum Wage Act (the "NYSMWA"), New York Labor Law Article 19, and the Wage Orders issued thereunder at 12 NYCRR 137-142, Hallissey and Beetle were entitled to certain hourly minimum wages, overtime wages, and other wages, in respect to work and labor which Hallissey and Beetle performed within the State of New York, all of which the defendants failed to pay them in violation of such laws.

49.     That there are numerous persons who are similarly situated to the plaintiffs Hallissey and Beetle in respect to their claims under the NYSMWA in that such similarly situated persons, like Hallissey and Beetle, performed substantial work, labor and services for the defendants for which such persons did not receive the compensation required by the NYSMWA, and upon information and belief the number of such persons exceeds 100.

50.     That the persons similarly situated to plaintiffs Hallissey and Beetle and described in paragraph 50 constitute a class of persons that is so numerous that joinder of all such persons individually is impractical.

51.     There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically whether the defendants have any legal obligation to the class members under the NYSMWA and if so what

15

is the extent of such obligation.

52.    The claims of the plaintiffs Hallissey and Beetle are typical of the claims of the above described class, in that the interests of the plaintiffs Hallissey and Beetle are co-extensive with the interests of the other members of the class, there is a lack of adverse interests between the plaintiffs Hallissey and Beetle and the other members of the class, and common questions exist.

53.    The plaintiffs Hallissey and Beetle will fairly and adequately protect the interests of said class.

54.    A class action is superior to other available methods for the fair and efficient adjudication of the class claims under the NYSMWA.

55.    That pursuant to Rule 23 of the Federal Rules of Civil Procedure this Second Cause of Action should proceed as a class action in respect to the unpaid wages owed to the plaintiffs Hallissey and Beetle and the class members under the NYSMWA and the Wage Orders issued thereunder.

56.    The exact amounts owed to Hallissey and Beetle and the class members is unknown but will be determined and stated after a review of the defendants' records and/or upon the trial of this matter.

57.    Wherefore, plaintiffs Hallissey and Beetle, on behalf of themselves and the within described class of other persons similarly situated on this Second Cause of Action, seek a

16

judgment against the defendants for all wages which should have been paid, but were not paid, to Hallissey and Beetle and such class members pursuant to the NYSMWA and the Wage Orders issued thereunder, together with an award of attorney's fees, interest and costs as provided under the NYSMWA and New York State Labor Law § 198.

Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
July 23, 1999

Yours, etc.,

Leon Greenberg (LG3286)
LEON GREENBERG P.C.
ATTORNEY FOR PLAINTIFFS
5 Beekman Street - Suite 212
New York, New York 10038
(212) 227-4841

17

EXHIBIT "G"

# AKIN GUMP
# STRAUSS HAUER & FELD LLP
■■■■■■■■ Attorneys at Law

**W. RANDOLPH TESLIK, P.C.**
202.887.4287/fax: 202.887.4288
rteslik@akingump.com

January 26, 2009

VIA OVERNIGHT MAIL AND FACSIMILE

Leon Greenberg, Esq.
633 South 4th St., Suite 4
Las Vegas, Nevada 89101

  Re: Hallissey v. America Online, Inc., *et al.*, 99-civ-3785

Dear Leon:

  We write in response to your letters of December 31, 2008 and January 6, 2009. In those letters, you seek Defendants' consent to file a second amended complaint. You also inquire as to why two persons were included on the class notice distribution lists. We address both of those issues below.

## I. Request To File A Second Amended Complaint

  In your December 31, 2008 letter, you enclosed a proposed Second Amended Complaint that seeks to, among other things, add twenty-one (21) new state law claims. Plaintiffs' attempt to add these claims more than nine years after the lawsuit was filed is unacceptable. Moreover, many of the claims you now propose to assert are barred as a matter of law. Since it is undisputed that the former Community Leader Program closed in June 2005, statutes of limitations periods have expired.

  In addition, while state wage and hour claims in California may under certain circumstances use the four-year statute of limitations of California's Business and Professions Code § 17200, as you well know, the California courts have already denied class treatment of the claims of AOL's former community leaders who worked in California. Accordingly, Plaintiffs' attempt to get a "second bite at the apple" by repleading California state claims in the federal courts is barred by the doctrines of *res judicata* and/or collateral estoppel.

  Because the new state law claims included in your draft Second Amended Complaint are untimely, time-barred, and/or estopped, any attempt to amend the First Amended Complaint is clearly futile. As such, we believe you should reconsider your intent to seek this amendment and, if you insist on doing so, we will oppose the amendment.

**A K I N   G U M P**
**S T R A U S S   H A U E R   &   F E L D** LLP
Attorneys at Law

Leon Greenberg, Esq.
January 26, 2009
Page 2

## II.    Notice: Cody Henson and Richard Back

In your January 6, 2009 letter, you complain that AOL included two individuals on its notice distribution lists who did not participate in the Community Leader Program: Cody Henson and Richard Back. We accept your representation that neither person was associated with the Community Leader Program and have investigated why they received notice.

Regarding Mr. Henson, you state that his mother does not believe that he has an AOL account. Of course, we cannot address his mother's personal knowledge or speculate who actually registered Mr. Henson's name with AOL. However, AOL's records reveal that there is an active email account registered to a Mr. Cody Henson with the address "208 Eastgate Dr., Whitehouse, TX, 75791." AOL's records also show that the following screen name was registered under Mr. Henson's account: "rngr07cdy@aol.com."

As we described in our August 25, 2008 letter, AOL compiled the notice distribution lists by, among other things, searching for all screen names with indicia believed by AOL to be used by former CLs. The prefix "rngr" was included in these searches, since it was formerly used by certain "Rangers" associated with the Community Leader Program. Since Mr. Hanson had the prefix "rngr" in his screen name, he was included on the distribution lists.

Similarly, AOL included Mr. Back on the distribution lists, because his email addresses also had indicia of his being associated with the Community Leader Program. Mr. Back's email account, which is registered to Richard and Nancy Back, contains screen names related to an AOL pet care forum, whose members were identified as possible former community leaders.

We will be happy to research for you other persons who have apparently advised you that they are not former community leaders but have received notice.

Very truly yours,

W. Randolph Teslik, P.C.

cc:    Michael Shen, Esq.
       Nilufer Loy, Esq.

507;

        j) Massachusetts General Laws Chapter 149 § 150;

        k) Minnesota Fair Labor Standards Act, Minn. Stat. § 177.27;

        l) Nevada Revised Statutes 608.040;

        m) New Hampshire Revised Statute Ann. Ch. 279 §1; N.H. Rev. Stat. Ann. ch. 275, §53;

        n) New Jersey Rules of Court Rule 4:32-1, N.J.S.A. 34:11-56a25, New Jersey Punitive Damages Act, N.J.S.A. § 2A:15-5.12;

        o) New Mexico Stat. Ann. §50-4-26(B)(1);

        p) Oregon Rev. Stat. 652.230;

        q) Pennsylvania Cons. Stat. §260.10;

        r) Vermont Statutes Ann. Title 21, § 347, § 395;

        s) Washington Rev. Code §49.52.050,070;

        t) Wisconsin Stat. §109.11(2)(a).

    80.    That there are numerous persons (the "State Law Penalty Class Plaintiffs") who are similarly situated to the individual plaintiffs in that such persons were not paid wages by the defendants required under one or more of the State laws set forth in paragraph 65 and as a result are entitled to wage payment penalties or punitive damages under one or more of the State laws set forth in paragraph 79, and upon information and belief the number of such persons in total exceeds 10,000 with at

24

least 100 having worked for the defendants in each State identified in paragraph 79.

81.  That the persons similarly situated to the individual plaintiffs in paragraph 79 constitute a class of persons that is so numerous that joinder of all such persons individually is impractical.

82.  There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically whether the defendants have any legal obligation to the class members under State wage payment penalty or punitive damages laws and if so what is the extent of such obligation.

83.  The individual plaintiffs have complied with all prerequisites imposed by any State law to the maintenance of this action and the assertion of jurisdiction by this Court over such State wage payment penalty law and punitive damages claims.

84.   The claims of the individual plaintiffs are typical of the claims of the above described class, in that the interests of the individual plaintiffs are co-extensive with the interests of the other members of the class, there is a lack of adverse interests between the individual plaintiffs and the other members of the class, and common questions exist.

85.  The individual plaintiffs will fairly and adequately protect the interests of the members of the State Law Class

25

Plaintiffs.

86.    A class action is superior to other available methods for the fair and efficient adjudication of the class claims under the State wage payment penalty and punitive damages laws at issue.

87.    That pursuant to Rule 23 of the Federal Rules of Civil Procedure this Third Claim for Relief should proceed as a class action in respect to the State law wage payment penalty and punitive damages claims of the individual plaintiffs and the State Law Penalty Class Plaintiffs under the State wage payment penalty and punitive damages laws at issue.

88.    The exact amounts owed to the individual plaintiffs and the State Law Penalty Class Plaintiffs is unknown but will be determined and stated after a review of the defendants' records and/or upon the trial of this matter.

89.    Wherefore, the individual plaintiffs, on behalf of themselves and the State Law Penalty Class Plaintiffs, seek a judgment against the defendants as alleged herein for the penalties and punitive damages owed to the individual plaintiffs and such class members pursuant to the State wage payment penalty and punitive damages laws at issue, together with an award of attorney's fees, interest and costs as provided under such State laws.

26

Plaintiffs demand a trial by jury on all issues so triable.

Dated: Las Vegas, Nevada
        February 25, 2009

                                    Yours, etc.,


                                    _____
                                    Leon Greenberg
                                    Michael Shen
                                    Attorneys for Plaintiffs
                                    633 South 4th Street #4
                                    Las Vegas, Nevada 89101
                                    (702) 383-6085

27

EXHIBIT "1"

EXHIBIT "1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X Docket #: 99 Civ. 3785
KELLY HALLISSEY, et. al.,                Judge Duffy

                         Plaintiffs,

           -against-


AMERICA ONLINE, INC., et. al.,


                         Defendants.
--------------------------------------X
     MARE STERN, being duly sworn, deposes and states that:

     1.  I am over the age of 21 years and offer this

declaration in support of my request to have the Court amend the

complaint in this matter to name me as a representative

plaintiff for a putative California State law subclass of AOL

"Community Leaders" ("CLs").

     2.  I was employed by AOL as a CL in its community leader

program from 1994 until the program was terminated in June of

2005.  In the earlier years I worked at AOL I was not referred

to as a "community leader" (that term was not used until later)

but was referred to by other terms, including "remote staff."

When I use the term CL in this statement I am referring to the

entire time I worked in an unpaid capacity for AOL.

     3.  During the entire time I worked as a CL I did not

receive any monetary (cash) compensation from AOL for my work as

a CL.  That work consisted of performing tasks that were also performed by paid AOL employees and included such things as acting as chat hosts, enforcing AOL's terms of service, maintaining message boards, editing and setting up file libraries, creating RAINMAN content, and other activities that kept various areas of AOL service updated and running smoothly.

4.  Before I was allowed to perform work for the defendants I was required to undergo a training program.  I took the same training as AOL in-house employees, including AOL's proprietary HTML-like program, called 'RAINMAN.' After learning RAINMAN, I could create content, buttons, put up graphics, and similar activities.  I was given access to special areas and commands in order to trouble shoot, preview, and post via RAINMAN. I had rights to create message boards, order and name them, and to run entire file libraries. I was also given training in the use of "gag" powers which was the ability to silence disruptive AOL subscribers, team leading classes, hosting classes, board management classes, and courses in dealing with difficult members.  While I worked for the defendants I was required to prepare, and send to my superiors, reports of my activities on a regular basis.  This included filing reports on the total number of hours I worked each week, reports of my activity on each

shift of hours that I worked and reports on each "gag" I issued to subscribers who violated AOL's terms of service ("TOS"), and sometimes usage statistics. The hours of my work were also fixed by the defendants and for most of the time I was a CL I was expected to work certain pre-determined shifts of hours each week (although I did have some flexibility in selecting the exact shifts I would work). I was also required for much of the time I was a CL to work a certain minimum number of hours each week (I believe it was six hours per week) to maintain my status as a CL.

5. My work for the defendants as remote staff involved assisting AOL subscribers and other "volunteers" and paid employees of defendants. I was often under the supervision of a shift coordinator whom I had to report to and whose instructions I had to follow. For my Tech Live postion, I had to learn to troubleshoot AOL on both PC and Mac platforms, and provide live-time, or e-mail answers or direct members to FAQs. When I could not answer the member's technical question, my supervisor would bump that member to the 'upper rows' in Tech Live, where paid AOL staff members would answer the questions. I was always assigned to a fixed area on the AOL service for the duration of my shift. The shift coordinator would communicate changes in

protocols or specifics about performances during a shift.
Sometimes when hosting, I would be paged to an area of the AOL
service which I was responsible for and take whatever action was
appropriate, including enforcing AOL's TOS rules and gagging or
warning TOS violators or assisting a chat host with conducting
an online chat or otherwise assisting AOL subscribers.  My shift
coordinator or supervisor could reassign me to a different room
and/or co-host, depending upon the traffic or activity in a
particular assigned area. This meant that most of my activities
as a host, moderator, file librarian, or in TechLive were
controlled by other people (i.e., where I would work, and what I
would do, during my shifts was largely beyond my control).

    6.   The activities I engaged in while I was employed by the
defendants were not just recreational or social.  Although I
enjoyed helping people online, which was the main focus of my
job, and did help people online even while I was not working for
defendants, my job as a remote staff member involved a great
deal more than just socializing online.  For example, I had to
be available at a set time for my shift and prior to doing any
work I was required to review various instructions and
information from my superiors.  I was required to have my
computer set up a specific way, with specialized software for

creating shift reports and informative macros. When my shift of
one to three hours was over I would have to file a detailed
report with the defendants which could take a few minutes or an
hour.  I would also respond to a large volume of email which was
directed to my specialized AOL CL screen name.  These sorts of
behind-the-scenes paperwork, organizational, and reporting
activities took up a considerable amount of time.  I would
estimate that for every hour I spent online engaging in my
remote staff activities I spent at least one-half hour doing
behind the scenes support work required by the defendants.
During the host and board moderation sessions I also had to
enforce the defendants' TOS rules and lend technical assistance
to AOL subscribers, including helping them with non-AOL computer
problems. In addition, I was required to not only report
absences and request time off, but was also required to find a
substitute or substitutes to cover my shift(s).

7.  It would have been impossible for me to do my job
without the tools (software access) provided by the defendants.
I could not function as a remote staffer unless the defendants
gave me access to the special functions on the AOL service which
allowed someone to act as a CL.  These functions were not

available to regular subscribers.  I was also given the power to "gag" disruptive AOL subscribers, a function not available to regular subscribers or all "volunteers".  I was only to use this "gag" power in accordance with specific rules laid down by the defendants and whenever I used it I was required to file a special report with the defendants. I also used specific software for shift reports, to create informative macros, and a RAINMAN 'grinder' for preparing and creating RAINMAN content pages.

8.   I worked as a CL for AOL out of my home in California. During the entire time I worked as a CL at AOL I was never told by AOL that I was an employee of AOL or that I had any rights under California law to be paid a minimum wage by AOL.  Until I received a notice in 2008 about the pendency of this case I was unaware of this lawsuit and had not been advised that AOL was responsible for paying me the minimum wages required by California law for my work as a CL.

9.   I understand that if this case is certified as a class action I will be pursuing this case not just for myself but on behalf of all of the AOL California CLs who were not paid minimum wages and overtime wages that they are owed by the defendants. I understand that if this case is certified as a

class action I will have a responsibility to represent the other AOL CLs and act in their interests and not just my own personal interest.  I understand that if this case is certified as a class action I will not be able to settle my claim against the defendants without approval from the Court.  I am comfortable with serving as a class representative and support the class action certification of this case.  My attorneys have also advised me that they will assume responsibility for paying all of the expenses needed to prosecute this case as a class action.

     10.  I have read the foregoing and the same is true and correct.

 

_____         7/17/08
Mare Stern                         Date

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X Docket #: 99 Civ. 3785
KELLY HALLISSEY, et. al.,

                    Plaintiffs,

          -against-                    DECLARATION OF PLAINTIFF
                                       CYNTHIA WEIS

AMERICA ONLINE, INC., et. al.,


                    Defendants.
--------------------------------------X

     CYNTHIA WEIS hereby affirms under the penalties of perjury

that:

     1.   I am a plaintiff in this lawsuit and have previously

offered evidence in this case through my affidavit in opposition

to defendants' motion to dismiss and through my deposition.  In

my prior deposition testimony and affidavit I have extensively

detailed to the Court the nature of the work I performed as a

Community Leader ("CL") for the defendant.  I worked as a CL for

a number of years prior to the initiation of this lawsuit in 1999

and until sometime in 2000 or 2001.

     2.   I am submitting this declaration in support of my

request to have the Court amend the complaint in this matter to

name me as a representative plaintiff for a putative California

State law subclass of AOL "Community Leaders" ("CLs") for the

purpose of collecting from AOL the minimum wages owed under

California law to all CLs who worked in California.

                    Page 1 of  2

3.   I worked as a CL for AOL out of my home in California. During the entire time I worked as a CL at AOL I was never told by AOL that while acting as a CL I was an employee of AOL.  AOL never advised me that I had any rights under California law to be paid a minimum wage by AOL for my work as a CL.

4.   I understand that if this case is certified as a class action I will be pursuing this case not just for myself but on behalf of all of the AOL California CLs who were not paid minimum wages and overtime wages that they are owed by the defendants. I understand that if this case is certified as a class action I will have a responsibility to represent the other AOL CLs and act in their interests and not just my own personal interest.  I understand that if this case is certified as a class action I will not be able to settle my claim against the defendants without approval from the Court.  I am comfortable with serving as a class representative and support the class action certification of this case.  My attorneys have also advised me that they will assume responsibility for paying all of the expenses needed to prosecute this case as a class action.

5.   I am over the age of 21 years and have read the foregoing and affirm the same is true and correct.


_____          07-24-08
CYNTHIA WEIS                              Date


Page 2 of  2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X Docket #: 99 Civ. 3785
KELLY HALLISSEY, et. al.,

                        Plaintiffs,

        -against-           DECLARATION OF PLAINTIFF
                              ARNOLD TIJERINA

AMERICA ONLINE, INC., et. al.,

                        Defendants.
----------------------------------------X

     ARNOLD TIJERINA hereby affirms under the penalties of perjury that:

     1.  I am a plaintiff in this lawsuit and have previously offered evidence in this case through my affidavit in opposition to defendants' motion to dismiss and through my deposition.  In my prior deposition testimony and affidavits I have extensively detailed to the Court the nature of the work I performed as a Community Leader ("CL") for the defendant.  I worked as a CL from 1997 until 1999.

     2.  I am submitting this declaration in support of my request to have the Court amend the complaint in this matter to name me as a representative plaintiff for a putative California State law subclass of AOL "Community Leaders" ("CLs") for the purpose of collecting from AOL the minimum wages owed under California law to all CLs who worked in California.

     3.  I worked as a CL for AOL out of my home in California.

During the entire time I worked as a CL at AOL I was never told by AOL that while acting as a CL I was an employee of AOL. AOL never advised me that I had any rights under California law to be paid a minimum wage by AOL for my work as a CL.

4.    I understand that if this case is certified as a class action I will be pursuing this case not just for myself but on behalf of all of the AOL California CLs who were not paid minimum wages and overtime wages that they are owed by the defendants. I understand that if this case is certified as a class action I will have a responsibility to represent the other AOL CLs and act in their interests and not just my own personal interest.  I understand that if this case is certified as a class action I will not be able to settle my claim against the defendants without approval from the Court.  I am comfortable with serving as a class representative and support the class action certification of this case.  My attorneys have also advised me that they will assume responsibility for paying all of the expenses needed to prosecute this case as a class action.

5.    I am over the age of 21 years and have read the foregoing and affirm the same is true and correct.

_____          _____
ARNOLD TIJERINA                               8/12/08
                                              Date

Page 2 of  2

# EXHIBIT "2"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X Docket #: 99 Civ. 3785
KELLY HALLISSEY, et. al.,                 Judge Duffy

                          Plaintiffs,

            -against-

AMERICA ONLINE, INC., et. al.,

                          Defendants.
---------------------------------------X
      Sherie D. Perez, being duly sworn, deposes and states that:

      1.  I am over the age of 21 years and offer this
declaration in support of my request to have the Court amend the
complaint in this matter to name me as a representative
plaintiff for a putative Colorado State law subclass of AOL
"Community Leaders" ("CLs").

      2.  I was employed by AOL as a CL in its community leader
("CL") program from 1996 until 1999.

      3.  During the entire time I worked as a CL I did not
receive any monetary (cash) compensation from AOL for my work as
a CL.  That work consisted of performing tasks that were also
performed by paid AOL employees and included such things as
acting as chat hosts, enforcing AOL's terms of service,
maintaining message boards, and other activities that kept
various areas of AOL service updated and running smoothly.

                          Page 1 of 5

4.    Before I was allowed to perform work for the defendants
I was required to undergo a training program.  This lasted for
about one month for about six to twelve hours a week of chat
host and/or message board training before I was allowed to act
as a host.  I was also given training in the use of "gag" powers
which was the ability to silence disruptive AOL subscribers.
While I worked for the defendants I was required to prepare, and
send to my superiors, reports of my activities on a regular
basis.  This included filing reports on the total number of
hours I worked each week, reports of my activity on each shift
of hours that I worked and reports on each "gag" I issued to
subscribers who violated AOL's terms of service ("TOS"). The
hours of my work were also fixed by the defendants and for most
of the time I was a CL I was expected to work certain pre-
determined shifts of hours each week (although I did have some
flexibility in selecting the exact shifts I would work).  I was
also required for much of the time I was a CL to work a certain
minimum number of hours each week (I believe it was six hours
per week) to maintain my status as a CL.

5.    My work for the defendants as a host involved
assisting AOL subscribers and other "volunteers" and paid
employees of defendants.  I was under the supervision of a shift

coordinator whom I had to report to and whose instructions I had
to follow.

6.  The activities I engaged in while I was employed by the
defendants were not just recreational or social.  Although I
enjoyed helping people online, which was the main focus of my
job, and did help people online even while I was not working for
defendants, my job as a host involved a great deal more than
just socializing online.  For example, I had to be available at
a set time for my hosting shift and prior to doing any host work
I was required to review various instructions and information
from my superiors.  When my one to two hour hosting session was
over I would have to file a detailed report with the shift
coordinator which could take a few minutes or an hour.  I would
also respond to a large volume of email which was directed to my
host screen name.  These sort of behind the scenes paperwork,
organizational, and reporting activities took up a considerable
amount of time.  I would estimate that for every hour I spent
online engaging in my hosting activities I spent at least one-
half hour doing behind the scenes support work required by the
defendants.  During the hosting sessions I also had to enforce
the defendants' TOS rules and lend technical assistance to AOL
subscribers, including helping them with non-AOL computer

problems.  While, on occasion, if I was not very busy during my
hosting shifts I would be free to roam the various part of the
AOL service and socialize or participate in chats or other
online activities, this sort of activity constituted less than
10% of the time I spent on my hosting shifts.

7.   It would have been impossible for me to do my job
without the tools (software access) provided by the defendants.
I could not function as a host unless the defendants gave me
access to the special functions on the AOL service which allowed
someone to act as a host.  These functions were not available to
regular subscribers.  I was also given the power to "gag"
disruptive AOL subscribers, a function not available to regular
subscribers or all "volunteers".  I was only to use this "gag"
power in accordance with specific rules laid down by the
defendants and whenever I used it I was required to file a
special report with the defendants.

8.   I worked as a CL for AOL out of my home in Colorado.
During the entire time I worked as a CL at AOL I was never told
by AOL that I was an employee of AOL or that I had any rights
under Colorado  law to be paid a minimum wage by AOL.  Until I
received a notice in 2008 about the pendency of this case I was
unaware of this lawsuit and had not been advised that AOL was

responsible for paying me the minimum wages required by Colorado law for my work as a CL.

9.   I understand that if this case is certified as a class action I will be pursuing this case not just for myself but on behalf of all of the AOL Colorado CLs who were not paid minimum wages and overtime wages that they are owed by the defendants. I understand that if this case is certified as a class action I will have a responsibility to represent the other AOL CLs and act in their interests and not just my own personal interest.  I understand that if this case is certified as a class action I will not be able to settle my claim against the defendants without approval from the Court.  I am comfortable with serving as a class representative and support the class action certification of this case.  My attorneys have also advised me that they will assume responsibility for paying all of the expenses needed to prosecute this case as a class action.

10.   I have read the foregoing and the same is true and correct.

_____          _July 23, 2008_
Sherie D. Perez                                  Date

Page 5 of 5

EXHIBIT "3"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X Docket #: 99 Civ. 3785
KELLY HALLISSEY, et. al.,                  Judge Duffy

                    Plaintiffs,

        -against-

AMERICA ONLINE, INC., et. al.,

                    Defendants.
----------------------------------------X
    Lynn M. Bemont, being duly sworn, deposes and states that:

    1.  I am over the age of 21 years and offer this
declaration in support of my request to have the Court amend the
complaint in this matter to name me as a representative
plaintiff for a putative Connecticut State law subclass of AOL
"Community Leaders" ("CLs").

    2.  I was employed by AOL as a CL in its community leader
("CL") program from, as best as I can currently recall,
September of 1996 through September of 2000.  I worked in that
capacity from my home in Connecticut.

    3.  During the entire time I worked as a CL I did not
receive any monetary (cash) compensation from AOL for my work as
a CL.  That work consisted of performing tasks that were also
performed by paid AOL employees and included such things as
acting as chat hosts, enforcing AOL's terms of service,
maintaining message boards, training new hosts, being a team

leader for a small group of hosts (my duties were to ensure that my group was up to date on all new changes and were fully trained to do their duties) and other activities that kept various areas of AOL service updated and running smoothly.

4.  Before I was allowed to perform work for the defendants I was required to undergo a training program.  This lasted for about one month for about six to twelve hours a week of chat host and/or message board training before I was allowed to act as a host.  This training also included the completion of a series of tests that I was required to pass in order to take on the duties of hosting.  I was also given training in the use of "gag" powers which was the ability to silence disruptive AOL subscribers.  While I worked for the defendants I was required to prepare, and send to my superiors, reports of my activities on a regular basis.  This included filing reports on the total number of hours I worked each week, reports of my activity on each shift of hours that I worked and reports on each "gag" I issued to subscribers who violated AOL's terms of service ("TOS").  I was required for much of the time I was a CL to work a certain minimum number of hours each week (I believe it was two hours per week) to maintain my status as a CL.

5.  My work for the defendants as a host involved

assisting AOL subscribers and other "volunteers" and paid employees of defendants.  I was under the supervision of a shift coordinator whom I had to report to and whose instructions I had to follow.

6.  The activities I engaged in while I was employed by the defendants were not just recreational or social.  Although I enjoyed helping people online, which was the main focus of my job, and did help people online even while I was not working for defendants, my job as a host involved a great deal more than just socializing online.  For example, I had to be available at a set time for my hosting shift and prior to doing any host work I was required to review various instructions and information from my superiors.  If I could not complete my hosting shift when scheduled, it was my responsibility to email other hosts to get coverage for my scheduled shift time.  When my one to two hour hosting session was over I would have to file a detailed report with the shift coordinator which could take a few minutes or an hour.  I would also respond to a large volume of email which was directed to my host screen name.  I was also responsible for reading the behind the scenes message boards just for hosts to keep myself updated on any changes in policies and procedures.  These sort of behind the scenes paperwork,

organizational, and reporting activities took up a considerable amount of time. I would estimate that for every hour I spent online engaging in my hosting activities I spent at least one-half hour doing behind the scenes support work required by the defendants. During the hosting sessions I also had to enforce the defendants' TOS rules and lend technical assistance to AOL subscribers, including helping them with non-AOL computer problems. I was also required to run promotions in the chat room of other scheduled chats during my hosting duties or to post promotions of upcoming chats onto the appropriate topical message boards. I was also required to promote AOL keywords during my hosting shifts to help other members to locate different areas of interest on AOL. I was required to keep a running "chat log" of my hosting activities and submit these logs as proof of my work at the end of my shift.

7. It would have been impossible for me to do my job without the tools (software access) provided by the defendants. I could not function as a host unless the defendants gave me access to the special functions on the AOL service which allowed someone to act as a host. These functions were not available to regular subscribers. I was also given the power to "gag" disruptive AOL subscribers, a function not available to regular

AOL subscribers.  I was only to use this "gag" power in accordance with specific rules laid down by the defendants and whenever I used it I was required to file a special report with the defendants.  I was also given access to a specific area just for Community Leaders which is where I would take my online classes and were given access to the required tests that I needed to complete.  CL's were required to stay updated on the AOL Terms of Service and retake certain tests after an allotted period of time to keep the material fresh in our memories.

8.  During the entire time I worked as a CL at AOL I was never told by AOL that I was an employee of AOL or that I had any rights under Connecticut law to be paid a minimum wage by AOL.  Until I received a notice in 2008 about the pendency of this case I had never been advised about this lawsuit and had never been advised that AOL was responsible for paying me the minimum wages required by Connecticut law for my work as a CL.

9.  I understand that if this case is certified as a class action I will be pursuing this case not just for myself but on behalf of all of the AOL Connecticut CLs who were not paid minimum wages and overtime wages that they are owed by the defendants. I understand that if this case is certified as a class action I will have a responsibility to represent the other

Page 5 of 6

AOL CLs and act in their interests and not just my own personal interest.  I understand that if this case is certified as a class action I will not be able to settle my claim against the defendants without approval from the Court.  I am comfortable with serving as a class representative and support the class action certification of this case.  My attorneys have also advised me that they will assume responsibility for paying all of the expenses needed to prosecute this case as a class action.

10.  I have read the foregoing and the same is true and correct.

_Lynn M. Bemont_
Lynn M. Bemont

_7-29-08_
Date

# EXHIBIT "4"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X Docket #: 99 Civ. 3785
KELLY HALLISSEY, et. al.,                Judge Duffy

                    Plaintiffs,

              -against-

AMERICA ONLINE, INC., et. al.,

                    Defendants.
----------------------------------------X

     Gregory Maccord, hereby affirms, under the penalties of

perjury, that:

     1.   I am over the age of 21 years and offer this

declaration in support of my request to have the Court amend the

complaint in this matter to name me as a representative

plaintiff for a putative Delaware State law subclass of AOL

"Community Leaders" ("CLs").

     2.   I was employed by AOL as a CL in its community leader

("CL") program from approximately 1998 until AOL ended its

community leader program.   I worked in that capacity from my

home in Delaware.

     3.   During the entire time I worked as a CL I did not

receive any monetary (cash) compensation from AOL for my work as

a CL.   That work consisted of performing tasks that were also

performed by paid AOL employees and included such things as

acting as a chat host, helping members with AOL questions and

problems, enforcing AOL's terms of service, maintaining message

boards, and other activities that kept various areas of the AOL service updated and running smoothly.

4. Before I was allowed to perform work for the defendants I was required to undergo a training program. This lasted for about one month for about six to twelve hours a week of chat host and/or message board training before I was allowed to act as a host. I was also required to take annual training to keep my skills current. While I worked for the defendants I was required to prepare, and send to my superiors, reports of my activities on a regular basis. This included filing reports on the total number of hours I worked each week, reports of my activity on each shift, and uploading a log of each shift that I worked. The hours of my work were also fixed by the defendants and for most of the time I was a CL I was expected to work certain pre-determined shifts of hours each week (although I did have some flexibility in selecting the exact shifts I would work). I was also required for much of the time I was a CL to work a certain minimum number of hours each week (I believe it was six hours per week) to maintain my status as a CL. At some point during the time I worked as a CL some of these requirements changed or were no longer imposed upon me, particularly during the last two years or so that I worked as a CL.

5.  My work for the defendants as a host involved
assisting AOL subscribers and other "volunteers" and paid
employees of defendants.  I was under the supervision of a shift
coordinator whom I had to report to and whose instructions I had
to follow.

6.  The activities I engaged in while I was employed by the
defendants were not just recreational or social.  Although I
enjoyed helping people online, which was the main focus of my
job, and did help people online even while I was not working for
defendants, my job as a host involved a great deal more than
just socializing online.  For example, I had to be available at
a set time for my hosting shift and prior to doing any host work
I was required to review various instructions and information
from my superiors.  When my three hour hosting session was over,
I would have to file a detailed report with the shift
coordinator which could take a few minutes or an hour, including
preparing and uploading a complete log of my shift.  I would
also respond to a large volume of email which was directed to my
host screen name.  I would estimate that for every hour I spent
online engaging in my hosting activities I spent at least one-
half hour doing behind the scenes support work required by the
defendants.  During the hosting sessions I also had to enforce
the defendants' Terms of Service rules.  I was also responsible

for monitoring message boards in the area I was assigned to and removing any posts on those boards that violated such rules.

7.   It would have been impossible for me to do my job without the tools (software access) provided by the defendants. I could not function as a host unless the defendants gave me access to the special functions on the AOL service which allowed someone to act as a host.  These functions were not available to regular subscribers.

8.   During the entire time I worked as a CL at AOL I was never told by AOL that I was an employee of AOL or that I had any rights under Delaware law to be paid a minimum wage by AOL. Until I received a notice in 2008 about the pendency of this case I had never been advised about this lawsuit and had never been advised that AOL was responsible for paying me the minimum wages required by Delaware law for my work as a CL.

9.   I understand that if this case is certified as a class action I will be pursuing this case not just for myself but on behalf of all of the AOL Delaware CLs who were not paid minimum wages and overtime wages that they are owed by the defendants. I understand that if this case is certified as a class action I will have a responsibility to represent the other AOL CLs and act in their interests and not just my own personal interest.   I understand that if this case is certified as a class action I will not be able to settle my claim against the defendants

without approval from the Court.  I am comfortable with serving
as a class representative and support the class action
certification of this case.  My attorneys have also advised me
that they will assume responsibility for paying all of the
expenses needed to prosecute this case as a class action.

      10.  I have read the foregoing and I affirm the same
is true and correct.

_____
Gregory Maccord

08-01-2008
_____
Date